# DISTRICT COURT OF THE UNITED STATES,

## FOR THE

# DISTRICT OF VERMONT,

## MAY TERM, 1849.

---

### UNITED STATES v. THE MARGARET YATES, &c.

A vessel not enrolled and licensed, but engaged exclusively in the foreign trade, does not become forfeit by having foreign goods on board.

An allegation, in an information against a vessel and cargo, that the master neither did nor would deliver a true manifest of the merchandize, but on the contrary delivered a false and fraudulent invoice of the merchandize, with a view to evade the revenue laws and defraud the United States, does not present a case within the act of congress of 1821.

Such an allegation presents a case within the 67th and 106th sections of the act of congress of 1799, and when the offence proved, under such allegation, consists in the omission to insert in the manifest a part of the merchandize, and it appears, that this proceeded altogether from mistake, and was wholly unintentional, the alleged fraudulent intent is disproved and a sufficient defence established.

It would seem to be a principle of the revenue code, applicable at least to all importations in vessels, if not to importations in general, that a penalty, or forfeiture, is not to be incurred for a mere mistake in the manifest, report, or entry, either in the quantity or value of the goods imported, without fraud, misconduct, or culpable negligence.

THIS was an information against a vessel and cargo of lumber seized upon the waters of Lake Champlain. The information contained several counts, but all but two were abandoned. One of the counts relied upon charged a forfeiture of the vessel for having on board articles of merchandize of foreign growth and manufacture, without being enrolled and licensed. The other count, after stating that the merchandize, consisting of scantling, boards, and plank subject to duty, was brought and imported in the vessel, from Canada, an adjacent foreign territory, into the United States, alleged, that neither the master, nor any other person, did or would deliver a true manifest of the merchandize, but on the contrary, the mas-

ter did deliver to the collector, with a view to evade the revenue laws and defraud the United States, a false and fraudulent invoice of the merchandize so on board the vessel, and thereby fraudulently represented the quantity of the scantling, boards and plank less than their true and actual quantity, and their value *less* than their true and actual value, against the form of the statute, &c.

It appeared in evidence, that the articles of merchandize on board the vessel were of the growth and manufacture of Canada, that the vessel was not enrolled and licensed, and was employed in transporting lumber directly from Phillipsburg in Canada to Whitehall in New York. It farther appeared, that the master of the vessel, on arriving in the United States from Canada, stopped at the custom house and delivered a manifest; but the officer, finding, on going on board the vessel, more lumber than was specified in the manifest, immediately seized both lumber and vessel. The manifest specified 3652 pieces of scantling, 219 pieces of boards, and 100 pieces of two inch plank; but there were also on board 300 pieces of plank, called culled plank, not mentioned. The agent of the claimant testified, the objection to the testimony being overruled, that he made out the manifest from a book containing entries of all the lumber, and handed the manifest to the master of the vessel, to be delivered at the custom house; that he intended to include, and supposed he had included, all the lumber, but in transcribing from the book omitted, by mistake, the 300 pieces of culled plank.

The jury were directed, that they could not find a forfeiture of the vessel under the first count; and that if they were satisfied from the evidence given, that the omission in the manifest of the 300 pieces of plank, which was the *only cause of seizure* proved under the other count, was accidental and unintentional, a mere clerical mistake in making out the manifest, they could not find a forfeiture either of the vessel, or the merchandize, under that count. A verdict being returned for the claimant on both counts, the district attorney, in behalf of the United States, moved for a new trial, on the ground of the admission of improper evidence and misdirection to the jury.

*C. Linsley*, district attorney, for United States.

*S. Foot* for claimant.

United States *v.* The Margaret Yates, &c.

PRENTISS, J.  The case presents two principal questions, quite distinct in their nature, arising under the two different counts in the information.  The question arising under the first count, and the one first in order, is, whether the facts proved would warrant the finding of a forfeiture of the vessel under that count.

The sixth section of the act of February 18, 1793, provides, that " vessels of twenty tons or upwards, other than such as are registered, trading between district and district; or between different places in the same district, or carrying on the fishery, without being enrolled and licensed, or if of less than twenty tons, and not less than five tons, without a license, if laden with goods the growth or manufacture of the United States only, shall pay at every port the same fees and tonage as foreign vessels ; and if she have on board any articles of foreign growth or manufacture, other than sea stores, she and her tackle, lading, &c., shall be forfeited."

This provision applies to vessels employed in the domestic trade ; that is, to vessels " trading between district and district, or between different places in the same district."   Now, the proof was, that the vessel seized was engaged, not in the domestic, but in the foreign trade—in trading between Canada and the United States.   Such trading is lawful, and every vessel employed in it, only stopping in the district first entered in the United States and complying with the revenue regulations thereof, may be unladen in the same or any other district.   It is true, that by the act of March 2, 1831, it is provided, that any boat, sloop, or other vessel of the United States, navigating the waters on the northern, northeastern, and northwestern frontiers, otherwise than by sea, shall be enrolled and licensed, and shall thereby be entitled to be employed either in the coasting or foreign trade.   But this act does not profess otherwise to alter the navigation laws, but leaves them in all other respects as they were.   It provides no penalty or forfeiture for their breach or violation, its object being simply to give to vessels enrolled and licensed, on these inland waters, the privileges as well of registered as of enrolled and licensed vessels, so that they may be employed as well in the foreign as in the domestic trade.   The vessel in question, therefore, although not enrolled and licensed, did not become forfeited by having foreign goods on board, it being engaged exclusively in the foreign trade.

The question arising under the other count in the information is, whether the evidence, showing the omission in the manifest of a part of the cargo of the vessel to have been by mistake, was properly admissible, and consequently whether the direction given to the jury, that, if the omission was accidental and unintentional, a mere clerical mistake in making out the manifest, no forfeiture had been incurred, was right. In considering this question, and as a preliminary step to a decision upon it, it becomes necessary to inquire, within what particular provision of the acts of congress, if within any, does the case stated in the count properly fall? Does it come within the act of March 2, 1821, as was insisted in the argument, or within the provision of some other of the revenue acts?

The act of 1821 provides, that it shall be the duty of the master of any vessel, except registered vessels, and of any person having the charge of any boat, canoe, or raft, and of the conductor or driver of any carriage or sleigh, and of every other person, coming from any foreign territory adjacent to the United States, into the United States, with merchandize subject to duty, to deliver, immediately on arriving in the United States, a manifest of the cargo or loading of the vessel, &c., or of the merchandize, at the office of any collector or deputy collector nearest to the boundary line; which manifest shall be verified by oath, stating that the manifest contains a full, just and true account of the kinds, quantities, and values of all the merchandize, so brought from such foreign territory; and if the master or other person having charge of the vessel, &c., or bringing the merchandize, shall neglect or refuse to deliver the manifest herein required, or pass by, or avoid, such office, the merchandize subject to duty, and so imported, shall be forfeited, together with the vessel, &c.; and the master, &c., shall be subject to pay a penalty of four times the value of the merchandize imported.

The forfeiture imposed by this act, which it will be perceived is a very heavy one, would seem, from the terms of the act, to be incurred only by neglecting or refusing to deliver a manifest, or passing by or avoiding the collector's office. Now, the information does not allege, that the master of the vessel neglected or refused to deliver a manifest, or that he passed by or avoided the collector's office. It impliedly admits, as the proof was, that a manifest was delivered, though

not one containing a full account of all the cargo. It neither negatives the delivery of a manifest, nor does it so much as allege the delivery of a false and fraudulent manifest. The allegation is, that the master neither did nor would deliver a true manifest of the merchandize, but, on the contrary, delivered a false and fraudulent *invoice* of the merchandize, with a view to defraud, &c. The act requires, not an *invoice*, but a *manifest* to be delivered; and as these are treated in the revenue laws as different things, and cannot be regarded as synonymous or identical in legal meaning, the delivery of a false and fraudulent invoice, as alleged, whatever consequence might attach to the delivery of a false and fraudulent manifest, is no offence against the act. In any view, that can be taken, therefore, the case stated in the information does not appear to come within the act of 1821. If the charge in the information, instead of being in the form it has assumed, and applying generally to the whole cargo, had been confined to the part of which no account was given, and the allegation had been simply, that no manifest was delivered, it would have presented a question deserving consideration, whether the case might not be treated as within the act. Still, if it might be so treated, it would seem, that there could be no forfeiture of the merchandize, of which a manifest was delivered.

If the case stated in the information is not within the act of 1821, it must, if within any enactment, be within the one hundred and sixth section of the act of 1799, which provides, that all vessels, boats, rafts, and carriages, arriving in the districts on the northern and northwestern boundaries of the United States, containing goods subject to duty, shall be reported, and shall be accompanied with like manifests, and like entries shall be made, as in case of goods imported in vessels from the sea, and, generally, such importations shall be subject to like regulations, penalties, and forfeitures, as in other districts. Among the provisions of the act, thus extended to the districts on the northern and northwestern frontiers, are those of the sixty sixth and sixty seventh sections. These sections provide for cases, where goods entered are not invoiced according to their actual cost, and where packages of goods entered differ in their contents from the entry; and the forfeiture in the cases, differing greatly from that imposed by the act of 1821, is limited in the one to the goods so not invoiced according to their actual

cost, and in the other to the goods contained in the package or packages so differing in their contents from the entry.

Supposing the case to come within either of these provisions—and it would probably be considered within the sense and spirit of that of the sixty seventh section if within either—there is no doubt whatever, that the matter allowed to be given in evidence on the part of the claimant was properly admitted, and the direction given to the jury upon it consequently right.

The sixty sixth section makes the forfeiture, where goods entered are not invoiced according to their actual cost, dependent on their being not so invoiced "*with design to evade the whole or a part of the duties thereon.*" And the sixty seventh section provides, that the forfeiture, where packages of goods entered differ in their contents from the entry, shall not be incurred, if it shall be made to appear, "*that such difference proceeded from accident or mistake, and not from an intention to defraud the revenue.*" The same provision is contained in the twenty fourth and fifty seventh sections, which, among other things, impose a penalty, or forfeiture, on the master of a vessel, for importing goods not included or described in the manifest, or where goods found on board shall not agree with the report, or manifest. From these provisions of the general collection act, it would seem to be a principle of the revenue code, applicable at least to all importations in vessels, if not to importations in general, that a penalty, or forfeiture, is not to be incurred for a mere mistake in the manifest, report, or entry, either in the quantity or value of the goods imported, without fraud, misconduct, or culpable negligence. If the case, where a manifest omits a part of the goods imported in a vessel, or the case where a manifest undervalues the goods, can in any form of allegation be brought within the act of 1821, it would seem, that the act, in either case, the manifest being made by it a substitute for the reports and entry, must be construed in subserviency to the principle applicable to them.

But looking to the case in the form in which it is presented in the information, and supposing it to be of such a nature as would subject the merchandize in whole or in part to forfeiture, and not merely the master of the vessel to a pecuniary penalty, the question in the case, independent of any special statute provision, would appear to be free from doubt. It is conceded, that where the commis-

sion or omission of an act is made *per se* an offence, or is of itself an actual violation of a law, of which there are numerous instances under the revenue and other laws, it is in general no defence, that the commission or omission of the act arose from accident or mistake and was unintentional. In such cases, arising under the revenue laws, relief from the penalty, or forfeiture, on the ground of accident or mistake, or of there being no fraud or wilful negligence, can be obtained only by application to the secretary of the treasury for its remission. But the law is otherwise, where the intent constitutes an essential part of the offence, as it does in many cases under the revenue as well as other laws, and as it is plainly made to do by the form of allegation in the present case.

The information, as we have seen, does not charge a neglect or refusal to deliver a manifest. It alleges, that the master neither did nor would deliver a true manifest, but delivered a false and fraudulent invoice of the merchandize, with a design to evade the revenue laws and defraud the United States, and thereby fraudulently represented the quantity of merchandize less than its true and actual quantity, and its value less than its true and actual value. Here is a charge of actual fraud, which certainly could not be committed without an actual fraudulent intent. Indeed, an actual fraudulent intent is alleged in express and positive terms, and forms the very essence of the charge. If, then, the omission in the manifest, or in what is called the invoice, of a part of the merchandize, which was the fraud relied upon in proof, proceeded altogether from mistake, and was wholly unintentional, the fact, if established, disproved the alleged fraudulent intent, and, on common principles, aside from any positive enactment, was of course a good defence.

From the views which have been taken of the case, it follows, that a new trial must be denied, and that judgment must be entered up on the verdict.