## Case No. 5,646.

### The GOVERNOR CUSHMAN.

[1 Abb. U. S. 14;[1] 1 Biss. 490; 5 Am. Law Reg. (N. S.) 286.]

District Court, D. Wisconsin. Sept. Term, 1865.

VIOLATION OF REVENUE LAWS—FORFEITURE.

1. The fact that prohibited articles are secretly introduced on board a vessel by persons employed as hands (such as a cook or waiter) at the will of the master merely, does not necessarily expose the vessel to forfeiture under a statute, such as the act of March 2, 1799, § 103 (1 Stat. 701), which imposes, as the punishment for importing specified articles, a forfeiture of the ship in which they have been imported; provided the articles in question are brought on board without the knowledge or consent of the master or owners, and in defiance of reasonable regulations prescribed on board the ship for securing conformity to the law.

2. If the master connives at such acts of the hands on board the vessel, she may be rendered liable to forfeiture; as the owners are liable for the acts of the master in the discharge of his duties as such. But they are not necessarily liable for the acts of all persons employed by the master on board the ship.

3. A vessel is not liable to forfeiture for every apparent violation of a revenue law, although the law imposes forfeiture as the punishment for a breach of its provisions. Evidence of a violation throws the burden of proof upon the claimant to show innocence. But accidental mistakes may be explained; and the existence of an intent to defraud the revenue

may be the subject of inquiry, and the claimant may show the act complained of to have been innocent.

Information for a breach of the revenue laws. The libel was filed against the propeller Governor Cushman, for smuggling distilled spirits in violation of section 103 of the act of March 2, 1799 (1 Stat. 703).

John B. D. Cogswell, Dist. Atty., for the United States.

Emmons & Van Dyke, for respondent [cited Taylor v. U. S., 3 How. [44 U. S.] 197, as to intention to evade the revenue laws, and knowledge and privity on the part of claimants; also, U. S. v. Breed [Case No. 14,-638]; U. S. v. Riddle, 5 Cranch. [9 U. S.] 311; U. S. v. Nine Packages Linen [Case No. 15,884.] [2]

MILLER, District Judge. This propeller was seized by the collector at the port of Milwaukee, on the seventh day of August, 1865. The information alleges and propounds, as causes for the seizure:—1. That distilled spirits in jugs and bottles, and not in casks or vessels of the capacity of ninety gallons wine measure and upwards, said jugs and bottles containing less than ninety gallons wine measure each, were imported and brought in the propeller, not being for the use of the seamen on board, from the port of Sarnia, in Canada, to Big Summer Island and Fox Island, in the United States, contrary to section 103 of the act of congress, approved March 2, 1799. 2. That brandy contained in jugs and bottles, and not in casks or vessels of the capacity of fifteen gallons and upwards, was imported and brought in said propeller to the port of Milwaukee, in the United States, from the port of Sarnia, in Canada, the same not being for the use of the seamen on board. 3. That no manifest containing the said jugs and bottles of distilled spirits was exhibited at the first port in the United States, as required by law. The vessel was seized in pursuance of information from one Royall Campbell, who had been employed as mate, and was discharged for drunkenness and incapacity for duty.

From the opening of navigation, in the spring of 1865, until seized, the vessel was running between Green Bay and Sarnia, Chicago and Milwaukee and Buffalo, touching at Sarnia.

The cook and a waiter, on May 12, 1865, secretly, in the night time, at Sarnia, purchased and had brought on board the vessel, three gallons of whiskey, three gallons of brandy, and three gallons of gin. On the 23rd of the same month, at Sarnia, they secretly, in the night time, purchased and had brought on board, three gallons of whiskey. And on the 1st of June, at Sarnia, they, in the same manner, and at night, pur-

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

[2] [From 1 Biss. 490.]

chased and had brought on board three gallons of whiskey. It was a standing rule of the vessel that no distilled spirits should be brought on board at Canadian ports, by employees. And the cook and waiter, being aware of the rule, and also of the positive orders of the captain to that effect, in purchasing ship stores at Sarnia, requested that the jugs containing spirits purchased of a grocer there, should be secreted in barrels under the stores. They deposited the jugs of spirits in a state room occupied by the waiter, and in a pantry adjoining the kitchen, out of view. Distilled spirits were purchased at Chicago and Milwaukee by officers and men, in the several trips of the vessel. Whiskey was delivered to workmen at Summer Island and Fox Island. And at these places men drank on board secretly, and carried, in bottles placed in their pockets, some of the spirits smuggled at Sarnia, with some purchased at American ports. The cook received payment for those spirits so sold. The clerk and the owner of the pier at Fox Island settled for whiskey which some of the men had purchased of the cook, by crediting the amount on a bill of wood supplied to the vessel, under the belief that the liquor had been brought from Chicago or Milwaukee. The captain and clerk drank liquor handed them by the cook, without compensation. They had no knowledge that any distilled spirits had been brought on board at Sarnia or any other Canadian port, by any of the hands, except a case of gin ordered by the captain, until the vessel was seized.

By section 103 of an act of congress approved March 2, 1799 (1 Stat. 701), no distilled spirits (arrack and sweet cordial excepted) shall be imported or brought into the United States, except in casks or vessels of the capacity of ninety gallons wine measure and upwards, on pain of forfeiture of the said distilled spirits imported contrary to the provisions described, together with the ship or vessel in which they shall be so imported: "provided, that nothing contained in this act shall be construed to forfeit any spirits for being imported, or brought into the United States, in other casks or vessels as aforesaid, or the ship or vessel in which they shall be brought, if such spirits shall be for the use of the seamen on board such ship or vessel, and shall not exceed the quantity of four gallons for each seaman." And by section 1 of an act approved March 1, 1827 (4 Stat. 235), brandy may be imported into the United States in casks of a capacity not less than fifteen gallons.

It is conceded that the owners of a ship or vessel are liable for the acts of the captain, as their agent, in the discharge of his official duties, but that the cook and waiter are mere employees, as hands on board under the control of the captain, and may be discharged at his will, subject to provisions of law and the terms of their employment. A cargo of a vessel is the lading of a ship or vessel; the merchandise or wares contained and conveyed in a ship or vessel.

A vessel is not liable to forfeiture for every apparent violation or breach of the revenue laws, in regard to the cargo. Accidental mistakes may be accounted for and explained. Where actions, suits, informations are brought for penalties or seizures, and the government makes out a prima facie case, section 71 of the act of March 2, 1799 (1 Stat. 678), throws the burden of explanation upon the claimant. The Luminary, 8 Wheat. [21 U. S.] 407. And by section 67 of the same act, the officers of the customs, after entry made of goods, wares, or merchandise, may, on suspicion of fraud, open and examine the packages; and if any of the packages so examined shall be found to differ in their contents from the entry, then the contents of such packages shall be forfeited, provided, that the said forfeiture shall not be incurred, if it shall be made to appear to the satisfaction of the officer, or the court in which a prosecution shall be had, that such difference proceeded from accident or mistake, and not from an intention to defraud the revenue.

In the case of U. S. v. Nine Packages of Linen [Case No. 15,884], it is decided that when goods are libeled, under the said section 67, for disagreeing with the entries, and the claimant sets up mistake as an excuse, the circumstance that probable cause of seizure has been made out, does not impose on the claimant the necessity of making out an unusually clear case of mistake. All he has to do is to produce ordinary proof. It was there holden, as sufficient and legal excuse for an incorrect entry of goods, that they were entered from an invoice made out in great hurry and agitation, while the goods were packed at Caen, in the absence of the owner, in order to secure them by removal from an apprehended pillage by Prussian soldiery which occupied the place.

It seems to be the policy of the law, that intention to defraud the revenue may be a proper subject of inquiry, and to allow the claimant to show an accidental omission or neglect. U. S. v. The Margaret Yates, 22 Vt. 663.

The distilled spirits mentioned in the information having been received on board secretly by employees or servants of the vessel, without the knowledge of the captain or clerk, and in violation of a standing rule and positive order, the owners of the vessel would not be liable for their loss. They formed no part of the cargo, to be placed in the manifest as such, nor should the vessel be subject to forfeiture, under the circumstances. The spirits, or such portion as the cook and waiter were not allowed by law, might be liable to seizure.

In the case of Phile v. The Anna, 1 Dall. [1 U. S.] 197, it appeared in evidence that the captain of the vessel had only exhibited twenty hampers of porter in his official

manifest, while a much greater quantity was found on board the ship, besides forty-two hampers landed and deposited in the store of one Smith, and twenty-four hampers actually delivered on shore to the captain himself, agreeably to his order given for that purpose, in the store of claimants. It was known likewise that a considerable number of hampers of porter had during the passage been removed from the hold and stored away in state-rooms, filling them from the floor to the ceiling. And it appeared that the owners and their agents had been on board before the removal of the hampers from that situation, and must have seen them. The gross number of the hampers discovered by the informants was computed at a little over eighteen tons. The vessel was rightly condemned, but the charge of the court is instructive in the following remark: "The case in Bunbury is the single one that reaches the point before us. There the question arises whether goods put on board secretly, and unloaded without the knowledge of the captain, would occasion a confiscation; and the judges agreed that if it was a small matter, and no part of the cargo, it would not. The claimants, therefore, to have the benefit of this case, should show, 1st, that the subject of the present prosecution is a small matter; 2nd, that it was no part of the cargo; and, 3rd, that it was smuggled without the knowledge of the captain."

All these positions are satisfactorily established in favor of the claimant. The distilled spirits, taken on board, in the darkness of the night, at Sarnia, on the three several occasions by the cook and waiter, were no part of the cargo, were smuggled without the knowledge of the captain or clerk, and were a very small matter—not deserving the seizure of the vessel by the collector, in the strict enforcement of the revenue law according to its requirements.

The law under which the information is brought allows to each seaman a quantity of distilled spirits for his use on board, not exceeding four gallons. The cook, steward, and waiters in lake vessels are considered and classed as seamen or mariners. They are a necessary part of the crew. They frequently assist in the navigation and care of the vessel at times of pressing necessity. They are allowed a lien in the admiralty for their wages, in common with the sailors. Fland. Mar. Law, §§ 438–440, and notes.

On the 12th of May, the cook and waiter brought on board nine gallons of spirits. On the two subsequent occasions they brought on board three gallons. If, by the law, these men were entitled to bring into the United States four gallons for each, to be used on board, upon every trip of the vessel, then they only exceeded their allowance as to quantity on one occasion to the amount of one gallon.

The policy of the law will not allow seamen to smuggle on board even their own allowance of distilled spirits. The captain is responsible for the acts of the seamen in this particular, in all cases coming to his knowledge. If he consents to such traffic, or connives at it, he may subject his vessel to seizure.

The captain and clerk may have drunk of these liquors without knowledge or suspicion of their having been brought on board at Sarnia, secretly, or that the cook and waiter were making merchandise of them. Distilled spirits having been brought on board on all the trips of the vessel at American ports, and freely used and disposed of, the captain and clerk might not suspect that Canadian liquors were either drunk or purchased at Big Summer and Fox Islands by persons not belonging to the vessel. The spirits smuggled at Sarnia being of small bulk, and stored away in disregard of the captain's orders and a standing rule of the vessel, the testimony of the captain and clerk that they had no idea that the spirits which they drank on board, or which were drunk by others, had been smuggled at Sarnia, is entitled to favorable consideration. It is not probable that this traffic in foreign distilled spirits on board the vessel would be allowed. Domestic spirits may be drunk and sold on board, without risk of forfeiture of either the spirits or the vessel. And it is no cause of forfeiture, under the act, for a seaman to extend the courtesy of his bottle of foreign spirits to an officer without compensation, in the absence of knowledge on the part of the officer that such spirits had been smuggled.

The captain had a legal right to order on board the case of gin, not exceeding four gallons, which he used on board. The distilled spirits, mentioned in the information, not having been received on board as part of the cargo, they were not placed in the manifest. The vessel, therefore, is not liable for not exhibiting a manifest containing it, at the first American port touched at after leaving Sarnia. I am satisfied that the information should be dismissed. Decree accordingly.

---

## GOVERNOR OF.

[Note. Cases cited under this title will be found arranged in alphabetical order under the names of the states; e. g. "Governor of the State of Arkansas v. Ball. See Case No. 530."]