## SUPREME COURT—IN BANCO.

### APRIL TERM—1877.

*Judd and M'Cully, J. J.*

In re the "Mary Belle Roberts," Libel for Smuggling Opium.

The statute authorizes the condemnation of a foreign vessel from which smuggling has been committed, although the owners are innocent of knowledge.

The fact of long continued and excessive drinking and drunkenness, it not having induced a state of insanity, cannot be pleaded in defence.

OPINION BY M'CULLY, J.

This case comes before the Court by appeal from the decision of Mr. Justice Judd.

Counsel for the defence have not before this Court offered the proposition that the Act of 1874, which prohibits the importation of opium except by the Board of Health, was in effect a repeal of the duty thereon, and we have only to remark on that point that we hold, upon the reasons set forth by the Court below, that the Act in question restricts the importation, but does not remove the duty, and that opium remains an article which may be smuggled.

The case is also free from embarrassment on the fact that the captain had surreptitiously landed nineteen tins of opium, and had eighteen other tins ingeniously concealed in the bulkhead behind his bureau.

The points presented in argument were these: (1) Can the ship, which is the property of innocent third parties, be forfeited by the unlawful proceeding of the master ?

It would be sufficient to make answer that the statute of this kingdom expresses in language too plain to admit of other construction that such a penalty may be enforced. This construction is not affected by the fact that the laws provide also other penalties, and that in the discretion of the Attorney General, other proceedings are more commonly taken, nor by the consideration that such a law may be impolitic; and certainly not by the fact, if it be such as stated by counsel for defense, that the recent legislation of the United States has omitted and therefore repealed the penalty of forfeiture when the smuggling is committed from a vessel.

We do not, however, find the statement of counsel to be correct.

Section 2872 of the Revised Statutes of the United States (1875) forbids the unlading or delivery of merchandise brought in any vessel from any foreign port, except in open day, that is to say, between the rising and the setting of the sun; and at any time without a permit from the collector, etc.

Section 2874 reads, "All merchandise, so unladen or delivered contrary to the provisions of Section 2872 shall become

forfeited and may be seized by any of the officers of the customs; and where the value thereof, according to the highest market price at the port or district where landed, shall amount to four hundred dollars, the vessel, tackle, apparel and furniture shall be subject to like forfeiture and seizure."

This law is Section 50 of the Act of 2d of March, 1799, and under it there have been many cases of forfeiture of vessels, to wit: the brig "Hannah," the schooner "Industry," the schooner "Harmony," all reported in 1 Gallison's Report, also the "John C. Brooks," 3 Ware, 273, and many others. In the last case the schooner "John C. Brooks" was about 200 tons burden, from Cardenas, in the island of Cuba, arrived at Portland on the 31st March, 1861, and landed on that day, without a permit from the collector, 21,000 cigars at Simonton's Cove, in Cape Elizabeth. Judge Ware says, "the smuggling is proved, and is not denied on the part of the claimant," etc. Decree of condemnation was pronounced.

In the "Governor Cushman" (1865), 1 Bissell, 490, which was a libel for forfeiture under the Act of 2d of March, 1799, Judge Miller says, "it is conceded that the owners of a ship or vessel are liable for the acts of the captain as their agent, in the discharge of his official duties, but the cook and waiter are mere employees as hands on board under the control of the captain, and may be discharged at his will, subject to provisions of law and the terms of their employment." In this case the learned Justice refused to decree forfeiture of the vessel because the cook smuggled on board a vessel a small quantity of liquor.

It is the simple duty of this Court to construe the Hawaiian statutes as they stand. Our statutes making a ship which carries abroad a stow-away debtor, without a passport, liable for all his debts, unless, as provided by a recent amendment, it appears that the master has first caused a search to be made by the police, is one which is not common to other countries, and may entail great hardship on innocent owners,

yet it could not be claimed that our Courts should construe it away or refuse to enforce it.

The language of Judge Ware in the "John C. Brooks," above referred to, is applicable. "To extract this case from the express language of the statute, it must be shown that while the legislature said one thing they meant another. This may be shown, but it is incumbent on him who alleges an exception to prove it."

The cases cited by the counsel in support of the doctrine that the acts of the agent beyond the scope of his authority and without the limits of the legitimate business with which he has been entrusted, do not bind the principal, are not relative to the case of the forfeiture of a ship for smuggling by the master. Says Sir W. Scott, in "The Vrow Judith," "I have no hesitation in saying that the act of the master of the vessel binds the owners in respect to the conduct of the ship as much as if it were committed by the owner himself." So it is true the master may imperil his ship upon the rocks of the law as well as upon the rocks of the coast, and both perils may be insured against.

2 Arnould on Insurance, 829.

We cite now at some length the language of Judge Story in the United States vs. brig Malek Adhel, 2 Howard, 233, both to show that the innocence of the owners does not protect the ship, and that statutes of forfeiture, and proceedings under them are not peculiar to this country.

"The next question is, whether the innocence of the owners can withdraw the ship from the penalty of confiscation under the Act of Congress? Here, again, it may be remarked, that the act makes no exception whatsoever, whether the aggression be with or without the co-operation of the owners. The vessel which commits the aggression is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner. The vessel

or boat (says the Act of Congress) from which such piratical aggression, &c., shall have been first attempted or made, shall be condemned. Nor is there anything new in a provision of this sort. It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, or by the master or crew thereof, a wrong or offence has been done, as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof. And this is done from the necessity of the case, as the only adequate means of suppressing the offence or wrong, or insuring an indemnity to the injured party. The doctrine, also, is familiarly applied to cases of smuggling and other misconduct under our revenue laws; and has been applied to other kindred cases such as cases arising on embargo and non-intercourse acts. In short, the acts of the master and crew, in cases of this sort, bind the interest of the owner of the ship, whether he be innocent or guilty; and he impliedly submits to whatever the law denounces as a forfeiture attached to the ship by reason of their unlawful or wanton wrong."

"The ship is also, by the general maritime law, held responsible for the torts and misconduct of the master and crew thereof, whether arising from negligence or a wilful disregard of duty; as, for example, in cases of collision and other wrongs done upon the high seas or elsewhere within the admiralty and maritime jurisdiction, upon the general policy of that law, which looks to the instrument itself, used as the means of the mischief, as the best and surest pledge for the compensation and indemnity to the injured party."

The United States vs. the schooner Little Charles, 1 Brock, 347, 354.

The Palmyra, 12 Wheat. 1, 14.

The Vrow Judith, 1 Rob. 150.

The Adonis, 5 Id. 256.

The Mars, 6 Id. 87.

(2) Is the plea of the captain's insanity good ? The Court recognizes the doctrine that a real insanity originating from excessive drinking places the subject of it on the same footing in respect to responsibility for crime, as if he had not wantonly induced it and relieves him from the rule *qui peccat ebrius luat sobrius.* In considering this point it is to be borne in mind that this is a civil proceeding *in rem,* and not a criminal proceeding against the individual, that therefore it is not necessary to find that the act was committed with legal malice, but that it is a question of his knowledge. Upon a review of all the testimony we fail to find proof of insanity. There is abundant evidence of the folly, the fool-hardiness of the man, but nothing which is not entirely explained by his constant drinking. It was a course of conduct which bid fair, if continued, to induce insanity, but up to the time of his arrest it appears he should be held as responsible as any drinking or drunken man is for his acts. He procured his opium in San Francisco, and during the voyage concealed it from every one, officers and passengers. It is very justly remarked by the Court who first heard the case, that an offence was already committed against the Hawaiian laws when the opium was taken on board at San Francisco without being placed on the manifest. There remained indeed a *locus penitentiæ,* and the captain could have retrieved himself by making the proper exhibit at the Custom House. He chose to adhere to his illegal purpose. There is evidence that he spoke to several persons of the opium which he had, and alluded to former speculation in smuggling. *In vino veritas.* Here perhaps may be found the motive of the government in exercising its discretion to apply the extreme measure of the law, if the master of a regular packet has made a business of smuggling opium; but, that impunity and drink had made the offender careless of some common precaution, is not a reason nor an argument for treating him as an irresponsible being. He knew enough

to make the entry of his ship without attracting the notice of the Collector General of Customs as an insane man, enough to bring the opium ashore clandestinely and to put the disguised package in the keeping of the Hotel Clerk, charging him to keep it safely as being worth $1500.

The opinions expressed by several witnesses whose affidavits were filed in Court subsequent to the first trial, that the captain was not of sound mind, they not being experts, would be excluded under the rule of law as generally held, but it may be remarked that had the Court considered them as being admissible testimony, they would not control the opinion derived from a review of all the testimony this included, that this was simply a case of long, continued and excessive drinking.

Decree of condemnation is therefore affirmed.

Attorney General Hartwell for libellants.

J. M. Davidson and E. T. O'Halloran for claimants, appellants.

Honolulu, June 25th, 1877.