## Case No. 15,612.

UNITED STATES v. The LITTLE CHARLES.

[1 Brock. 347.] [1]

Circuit Court, D. Virginia. May 27, 1818.

EMBARGO—REPORT OF MASTER—LIBEL—CHARACTER OF VESSEL—EXCEPTIONS IN STATUTE.

1. A libel against a vessel for violating the embargo laws, must contain a substantial statement of the offence, and it must be made with reasonable precision. But, inasmuch as the embargo act of December, 1807 [2 Stat. 457], prohibits all vessels, whether foreign or domestic, registered, or coasting vessels, from sailing to any foreign port or place, and the supplemental act of January, 1808, annexes the penalty of forfeiture to any vessel which violates either act, it is not necessary that the libel should set forth the particular character of the vessel.

2. The exception in the act exempting foreign vessels from its penalties, in certain cases, need not be noticed. The libel is good, though it does not charge that the vessel libelled, was not embraced within the exception.

3. A vessel is charged with having violated the embargo acts, in departing from a port of the United States, and proceeding to Antigua. The proof is, that she was at Camden, in North Carolina, in December, 1807, and January, 1808, and was in the port of Norfolk, in April, 1808. Held, that the report and manifest of her cargo, with the affidavit made by the captain, before the collector at Norfolk, which was adduced as proof, that she took in her cargo at Antigua, is admissible evidence.

4. These documents constitute one entire transaction; they need not the entry of the ship to make it complete.

5. In a prosecution against the ship itself, a forfeiture is incurred by her violation of the act, whether with, or without the authority of the owner. The vessel is put in action by the crew, who are guided by the master; she acts, and speaks by the master, and reports herself by the master; she is, therefore, affected by his report, whether the owners be so affected or not. But the owner is properly affected by it. The master is selected by the owner as his agent, amongst other things, for reporting the vessel. The report is prescribed by law. It must state, truly, the voyage, and the place from which she last sailed. The owner then has authorized the master to make the report, and though he may controvert it, yet it is prima facie evidence.

[Cited in U. S. v. Hall, Case No. 15,281; U. S. v. The Malek Adhel, 2 How. (43 U. S.) 234; Jecker v. Montgomery, 18 How. (59 U. S.) 116. Applied in Dobbins v. U. S., 96 U. S. 401. Cited in U. S. v. Hutchinson, Case No. 15,431.]

[Cited in Boggs v. Com., 76 Va. 994.]

6. After a vessel has been seized and libelled, and a forfeiture claimed, the court of admiralty does not lose its jurisdiction to condemn the vessel, by losing possession of it.

[Followed in Otis v. The Rio Grande, Case No. 10,613.]

[Cited in U. S. v. Mackoy, Case No. 15,696.]

[Appeal from the district court of the United States for the district of Virginia.]

The schooner Little Charles, with her tackle, apparel, and furniture, was seized in the port of Norfolk, in 1808, as forfeited to the United States, by reason of an alleged violation of the embargo laws. The attorney for the United States, filed his libel

[1] [Reported by John W. Brockenbrough, Esq.]

in the district court of the United States at Norfolk, charging, "that the said schooner Little Charles, on or about the 19th day of January, 1808, did depart from the port of Camden, in the district of Camden, in the state of North Carolina, which said port is a port of the United States, and proceed to a foreign place, to wit, to the island of Antigua, with a cargo on board, contrary to the provisions of the act of the congress of the United States, entitled, 'An act laying an embargo on all ships and vessels in the ports and harbours of the United States,' and of the act, &c., entitled, 'An act supplementary thereto,' &c., by which actings and doings, the said schooner Little Charles hath become forfeited to the United States, and hath been seized within the jurisdiction of this court, as forfeited, &c. Wherefore, the United States pray, that the proper and legal process may be issued in this case, that the said schooner, her rigging, tackle, apparel, and furniture, may be decreed by this court, to be sold as forfeited to the United States; that the proceeds of such sale may be appropriated as the law directs," &c.

The embargo law, referred to in the libel, was passed on the 22d day of December, 1807, and the supplementary law, also referred to, annexing the penalty of forfeiture for a violation thereof, was passed on the 9th day of January, 1808. The deposition of Anthony Butler proved, that the schooner Little Charles, sailed from Elizabeth City, in North Carolina, on the 19th of January, 1808, with a cargo of corn and staves, bound, as he was informed by Charles Grice, the owner, for the port of Charleston, in South Carolina, but in reality, the deponent believed, having so heard from several sources, for the West Indies. The report and manifest of the Little Charles, signed and sworn to by the master, James Corrmatt, at the port of Norfolk, on the 31st day of March, 1808, proved, that the schooner had taken in her cargo, which consisted wholly of West India products, at the island of Antigua. After the seizure of the Little Charles, and before the trial of the cause, viz. on the 12th of April, 1808, the judge of the district court of Norfolk, directed the marshal, in whose custody she was, to release the vessel, on the owner's giving bond, with good and sufficient security to the full amount of her value, in ready money, to be ascertained by three disinterested merchants, or shipwrights, and of one hundred dollars in addition thereto, "conditioned to abide and fulfil the further proceedings and final decree of the court, to be had hereafter, upon the subject matter of the seizure and release of the said schooner." The vessel was valued at $1,800, and a bond for $1,900, condition as required, was executed by Charles Grice the owner, and Warren Ashley, and the vessel was forthwith released.

At the trial of the cause, in the district court of Norfolk, in December, 1809, the court rejected the report and manifest of the cargo of the Little Charles, signed by the master as aforesaid, as incompetent testimony, "inasmuch as the ex parte affidavit of James Corrmatt, could not be read as evidence in this cause, to which he is no party, to prove the truth of the facts therein stated, and this being the only evidence to prove this fact, the court doth order and decree, that the libel be dismissed." [Case unreported.] From this decree, the United States appealed to this court.

Before MARSHALL, Circuit Justice, and TUCKER, District Judge.

MARSHALL, Circuit Justice. The first point made in this case, respects the pleadings. It is contended, on the part of the claimants, that the libel is insufficient to support a sentence confiscating the vessel. The libel is supposed to be defective, because it does not state the character of the vessel. The court is not informed whether the Little Charles was a foreign vessel, an American registered, or a coasting vessel. If the embargo acts omitted in their prohibitions any vessels of either description, the failure to aver the character of the vessel would certainly be fatal to the libel. The evidence in the cause, showing, that in point of fact, the Little Charles had incurred the penalty of the law, would not supply the want of a case stated in the libel. Nor would the averment, that the vessel had departed contrary to the provisions of the acts of congress, aid the libellants. This libel must contain a substantial statement of the offence, or it will not sustain a sentence of confiscation. These principles were, after mature deliberation. settled in the supreme court, in the case of The Hoppet, 7 Cranch [11 U. S.] 389, 2 Pet. Cond. R. 542. But in the same case it is laid down, "that all those technical niceties which are unimportant in themselves, and which stand only on precedents, of which the reason cannot be discerned, are not to be transplanted from the courts of common law into the courts of admiralty." All, then, that is required is, that the offence created by the law should be stated substantially, and with reasonable precision.

The libel charges, that the schooner Little Charles, did on or about the 19th day of January, in the year 1808, depart from the port of Camden, in the state of North Carolina, a port of the United States, and proceed to a foreign place, to wit, to the island of Antigua, with a cargo on board. The act of December, 1807, declares, "that an embargo be, and hereby is, laid on all ships and vessels in the ports and places, within the limits or jurisdiction of the United States, cleared or not cleared, bound to any foreign port or place." This prohibitory clause extends to vessels of every description. Foreign and domestic, registered and coasting vessels, are equally included in it.

No vessel of either character could proceed from an American to a foreign port, without violating this part of the law. Suppose it pleaded, that this was a coaster, would this excuse? It cannot, therefore, be necessary, in reason, or under the decision in the case of The Hoppet, so far as respects this part of the law, to aver the particular character of the vessel. The defence does not depend on her character.

The only part of the description found in the law, and not in the libel, is, "bound to any foreign port or place." These words are supplied by the charge that she did proceed to a foreign port. The fact charged in the libel, then, is a violation of the prohibitory part of the act of 1807. It remains to inquire whether the law contains any other provision which requires a more particular description of the vessel, or of the offence. The section provides "that nothing herein contained, shall be construed to prevent the departure of any foreign ship, or vessel, either in ballast, or with goods, wares, and merchandize, on board of such foreign ship or vessel when notified of this act." The whole section amounts to this. A general clause forbidding the departure of all vessels, from a port in the United States, to a foreign port, or place, is followed by an exception in favour of a foreign ship, departing in ballast, or with the cargo she had on board, when notified of the prohibition. If it be necessary in the libel to assert, that the Little Charles is not within the exception, then this libel is defective, otherwise it is sufficient. This point, also, has been considered in the supreme court. In the case of The Aurora, 7 Cranch [11 U. S.] 382, 2 Pet. Cond. R. 540, it is said by the court, "that in no case can it be necessary to state, in a libel, any fact which constitutes the defence of the claimant, or a ground of exception to the operation of the law on which the libel is founded."

The third section of the supplemental act declares that, "if any ship or vessel shall, during the continuance of the act to which this act is a supplement, depart from any port of the United States without a clearance or permit, or if any ship, or vessel, shall, contrary to the provisions of this act, or of the act to which this act is a supplement, proceed to a foreign port or place, such ship, &c., shall be wholly forfeited." This act expressly annexes the penalty of forfeiture to any ship or vessel which shall violate either the original or the supplemental act. It is, therefore, unimportant, so far as respects the sufficiency of the libel, which act is violated. If, as has been argued, different penalties were imposed by the act, on different descriptions of vessels, the court would certainly require that the libel should describe the vessel. But so far as the court can understand the law, forfeiture is inflicted on every vessel, of every description, which shall commit the offence charged in the libel. Consequently, it is not

necessary, for the instruction of the court, that the vessel should be described. The court is fully satisfied that the libel, in this case, is sufficient to sustain a sentence of condemnation, should the testimony prove the offence charged in it to have been committed.

2. The court will next proceed to examine that testimony. In doing so, the caption which the clerk has prefixed to the documents in the record, will certainly be disregarded, and only the documents themselves be considered as testimony. The offence is, departing from a port in the United States, after the passage of the first and second embargo acts, and proceeding to Antigua, which is a foreign port, or place. That the Little Charles was in the port of Camden, in North Carolina, in December, 1807, and January, 1808, when both those acts passed, is not controverted. That she was in the port of Norfolk, on the 8th of April, 1808, while they were in force, is equally clear, because she was then seized in that port. The inquiry is, had she, in the mean time, proceeded to a foreign port? The report and manifest, with the affidavit, made by the captain, before the collector of the port, at Norfolk, if admissible, in the form in which they appear in the record, are certainly, in the absence of all exculpatory testimony, sufficient to satisfy the mind that the Little Charles took on board, at Antigua, the cargo which was imported into Norfolk, and, consequently, that she had violated the embargo laws.

The objections to the admissibility of this document, are (1) that it is only part of a transaction; (2) that, in a criminal case, the declarations of the captain cannot affect the owner. It will be unnecessary to inquire whether, in any case, part of a transaction may be received as testimony. The general principle, that it may not, is certainly correct; but it might be improper to say, that this general rule admits of no possible exception. The inquiry is, at present, unnecessary, because the court is clear in its opinion, that this is not a part of, but is an entire transaction. The document is a report and manifest, as required by law, with the affidavit annexed, which is also required. Had the report and manifest been offered without the affidavit, or the affidavit without the report and manifest, it would have been part of a transaction. But offered together, they form one entire transaction, requiring nothing for its completion. It has been argued, that the entry ought to be produced. But the entry is a distinct and independent act, which must be preceded by, but may not follow the report and manifest. It is to be made by a different person, and if made, may be deferred fifteen days after the report. In the mean-time, a seizure, as in this case, may prevent an entry. The validity of this objection cannot be admitted.

The court will next inquire, whether this document can affect the vessel. The argument, that in criminal cases no authority can

be given, that the character of principal and agent disappears, and the parties become accomplices, will not be controverted. If this was a prosecution against the owner personally, and the confession of the master was adduced, to prove that he acted under the authority of the owner, the argument would be entitled to great consideration. But this is not a proceeding against the owner; it is a proceeding against the vessel, for an offence committed by the vessel, which is not less an offence, and does not the less subject her to forfeiture, because it was committed without the authority, and against the will of the owner. It is true, that inanimate matter can commit no offence. The mere wood, iron, and sails of the ship, cannot, of themselves, violate the law. But this body is animated and put in action by the crew, who are guided by the master. The vessel acts and speaks by the master. She reports herself by the master. It is, therefore, not unreasonable, that the vessel should be affected by this report.

But this vessel is the property of another; and his property, it is said, ought not to be wrested from him by evidence, which would be inadmissible in an ordinary question, concerning property. The court thinks otherwise. The master is selected by the owner, as his agent, for the purpose, among others, of reporting the vessel on her coming into port. The report is not a criminal act, but one prescribed by law. It must state, truly, the voyage, and however criminal that voyage may be, in reporting it, the master is in the precise line of his duty, and in the execution of an authority, inseparable from his character as master. This report, then, which is in the very terms prescribed by law, contains, according to the mandate of the law, an averment of the place from which the vessel last sailed. This averment, then, the owner has authorized the master to make for him; and although he may certainly be permitted to controvert it, the court deems it prima facie evidence of the fact. Such evidence has often been considered, in the supreme court, sufficient to warrant a forfeiture in the absence of that testimony, which would be in the power of the claimant, if innocent, and was so considered in the case of The Aurora, already cited.

But admitting the sufficiency of the libel, and the proof, it is contended, that the court has lost its jurisdiction, by losing possession of the thing to be condemned. The stipulation which is substituted for the vessel was, it is said, irregularly taken, and, consequently, cannot be considered as a substitute. That possession of the thing is necessary, as a foundation for the jurisdiction of the court, is, in general, true. There must be seizure to vest the jurisdiction. But it is not believed that the continuance of possession, is necessary to continue the jurisdiction. It is a general principle, that jurisdiction, once vested, is not divested, although a state of

things should arrive in which original jurisdiction could not be exercised. No authority has been found, nor is any reason perceived, for making this case an exception to the general rule. If, in proceedings in rem, the vested jurisdiction of the court could be divested by the loss of the thing, the reason must be, that as the thing could neither be delivered to the libellants, nor restored to the claimants, the sentence would be useless, and courts will not render judgments which can operate on nothing. But this reason will not apply to any case where the judgment will have any effect whatever: if, for example, the liability of the officer for making the seizure, to damages, be dependent on it, or if the parties have, by consent, substituted other property to abide the fate of the suit. However this may be, the court is not satisfied that its jurisdiction is lost by the circumstance that has occurred, and is of opinion, that the sentence of the district court be reversed, and the Little Charles be condemned and forfeited.

[Subsequently there was a motion for an execution against one Warren Ashley, who had signed a bond with the owner of the Little Charles, then libeled for a breach of the embargo laws. This execution was awarded. See Case No. 15,613.]