United States Court of Appeals,

Fifth Circuit.

Nos. 91-2644, 91-2670 and 91-2739.

Lois B. ELLIOTT, Plaintiff-Appellant,

James E. Ross, Movant-Appellant,

v.

The M/V LOIS B, Ex Union City Texas, et al., Defendants,

Donald Michael Lancon, Defendant-Appellee.

Jan. 11, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this in rem action over title and possessory rights to a vessel, we consider primarily two issues: whether the district court retained jurisdiction after the vessel left the court's possession and whether Rule 11 sanctions were appropriate. We affirm the district court's judgment on the merits, and we affirm the sanctions order in part and reverse it in part.

I.

In October 1987, Martin Snead ("Snead"), in an attempt to place assets beyond the reach of creditors, fraudulently transferred the M/V UNION CITY, TEXAS, an eighty foot, diesel powered tugboat, to Roy Robinson. On December 12, 1988, Donald Lancon ("Lancon") obtained a $4.2 million judgment against Robinson. A writ of execution on the judgment issued three days later. Pursuant to that writ, the Galveston County Sheriff attached the M/V UNION CITY. However, Robinson had already renamed the vessel the M/V LOIS B. and arranged for its transfer to his mother, Lois Elliott ("Elliott"), in October or November of 1988. Robinson backdated the sale documents to suggest that Snead had transferred the vessel directly to Elliott in 1987. In late December 1988, Elliott filed with the Coast Guard documents indicating that she owned the vessel.

On December 28, 1988, Elliott, through her attorney, James Ross ("Ross"), filed an in rem

maritime action in the district court to recover possession of the vessel from the custody of the Galveston County Sheriff. On January 5, 1989, Lancon purchased the vessel at the Galveston County Sheriff's sale. Later that same day, but before Lancon obtained possession of the vessel, the United States Marshal seized the tugboat from the sheriff pursuant to a warrant issued in Elliott's federal in rem action. Lancon filed a claim and answer in the in rem case in which he asked the district court to reject Elliott's title based on the fraudulent transfer and to declare Lancon the owner.

The vessel remained in the marshal's custody for approximately one month. By February 1989, the marshal's costs exhausted the $10,000 Elliott had advanced to pay for the costs of seizure, and Elliott did not advance further funds. At the marshal's request, a magistrate judge ordered the release of the vessel from the marshal's custody. Elliott took custody of the released vessel. In March of 1989, Elliott sold the M/V LOIS B. to the Big Oak Towing Company for $60,000. The Big Oak Towing Company later transferred the vessel to the End of the Line Towing Company.[1] The vessel has since disappeared.

At the time Elliott sold the LOIS B., the district court had not resolved the competing claims of Elliott and Lancon to the vessel. In fact, a trial on the merits was not held until a year and a half later.

Shortly before the bench trial, the presiding judge, the Hon. Samuel B. Kent, announced that his former law firm had represented Lancon in a related matter while he was a member of that firm. Both parties expressly waived any objection to having Judge Kent preside over the trial.

On December 4, 1990, the day of the trial, Elliott dismissed with prejudice her in rem claim to the vessel. The district court then tried the issue of title to the vessel and awarded title to Lancon. After the trial, Lancon requested that the court sanction both Elliott and Ross. Elliott, in turn, requested a new trial and argued that sanctions were inappropriate. Before resolving these motions, Judge Kent recused himself, having discovered that his recusal could not be waived by the parties.

---

[1]The district court set aside these sales as fraudulent and Elliott does not contest these findings on appeal. The vessel was not sold at a marshal's sale. We do not address whether or the extent to which the district court's judgment binds Big Oak Towing Company, End of the Line Towing Company or other non-parties.

The case was then assigned to the Hon. Kenneth Hoyt. Judge Hoyt held three hearings and, in May 1991, denied Elliott's motion for a new trial. At the same time, he found that both Ross and Elliott had violated Rule 11. Accordingly, he sanctioned them, jointly and severally, for $35,000 in attorney's fees and $60,000 for the sale price of the vessel.

On appeal, Elliott argues that: (1) the court lacked jurisdiction to adjudicate title to the vessel because it gave up the res; (2) the court should have granted a new trial because Judge Kent failed to timely recuse himself; (3) a Texas state court had already awarded her title to the LOIS B. and that decision is res judicata; (4) she did not violate Rule 11; and (5) in any event, the court assessed excessive sanctions against her. Ross also appeals the court's order, challenging only the Rule 11 sanctions assessed against him. We consider each of these arguments below.

## II.

Lois Elliott argues first that the district court lost in rem jurisdiction to adjudicate title to the M/V LOIS B. when the marshal released the vessel from custody. Elliott maintains that, because in rem was the sole basis for jurisdiction, the district court had no jurisdiction to entertain this case after the vessel left the district. Elliott also contends that the district court, as a court sitting in admiralty, did not have subject matter jurisdiction to hear equitable claims.

## A.

Fortunately, the Supreme Court has recently decided a case which is dispositive of Elliott's argument that the district court lost jurisdiction to proceed with this case once the LOIS B. left the Southern District of Texas. In *Republic National Bank of Miami v. United States,* --- U.S. ----, 113 S.Ct. 554, --- L.Ed.2d ---- (1992), the Court considered whether the court of appeals lost jurisdiction to decide an in rem forfeiture case after the government removed the forfeited money from the jurisdiction of the court.

The Court stated first that the civil forfeiture proceeding brought under 21 U.S.C. § 881 and pending before it was an action in rem, " "which shall conform as near as may be to proceedings in admiralty.' " *Republic,* --- U.S. ----, 113 S.Ct. 554, ----, --- L.Ed.2d ---- (quoting 28 U.S.C. § 2461(b)).

The court rejected the government's argument that transfer of the res destroyed the appeals court's jurisdiction:

> In arguing that the transfer of the res from the judicial district deprived the court of appeals of jurisdiction, the government relies on what it describes as a settled admiralty principle:  that jurisdiction over an in rem forfeiture proceeding depends upon continued control of the res.  We, however, find no such established rule in our cases.  Certainly, it long has been understood that a valid seizure of the res is a prerequisite to the initiation of an in rem civil forfeiture proceeding.

*Republic,* --- U.S. ----, 113 S.Ct. 554, ----, --- L.Ed.2d ----.  The court reasoned that once jurisdiction is established by seizure of the res, the court ordinarily maintains jurisdiction until the litigation ends.  It concluded that removal of the res did not destroy that in rem jurisdiction.  The Court, however, did discuss one exception to this general rule which requires consideration in this case.

The Court stated that if removal of the res prevented the court from enforcing its judgment or rendered the judgment "useless," then the court could lose jurisdiction once the res was removed.  The court provides little guidance on the limits to this exception.  We recognize that Elliott could make a colorable argument that the judgment of the court declaring Lancon the owner of the LOIS B. was useless when it was rendered.  This is true, Elliott would say, because at the time that judgment was rendered the vessel had disappeared and the court was without power to deliver possession or any other benefits of ownership of the LOIS B. to Lancon.  Although this argument is not without some force, we decline to accept it.  We read the Court's opinion as establishing a much narrower exception than this argument suggests.  In discussing the "useless judgment" exception, the Court relied heavily on *United States v. THE LITTLE CHARLES,* 26 F.Cas. 979 (C.C.D.Va.1818) (No. 15,612).  In discussing this case, the Court stated:

> The Chief Justice [in *THE LITTLE CHARLES* ] noted that in some cases there might be an exception to the rule, where the release of the property would render the judgment "useless" because "the thing could neither be delivered to the libellants, nor restored to the claimants." *Ibid.*  He explained, however, that this exception "will not apply to any case where the judgment will have any effect whatever."

*Republic,* --- U.S. ----, 113 S.Ct. 554, ----, --- L.Ed.2d ----.

We are unable to say that the district court's judgment in this case will have no effect whatever.  Recent developments in this case demonstrate how this judgment could benefit Lancon in a concrete way.  After our opinion in this case was circulated to the panel, we received a motion

to intervene in this appeal by an alleged good faith purchaser of the LOIS B., Frazier Towing Company ("Frazier"). Frazier alleges in its proposed petition of intervention that it acquired the vessel from End of the Line Towing Company, which in turn acquired from Big Oak Towing Company, which acquired from Elliott. Assuming without deciding that the district court's judgment will only be given effect between Elliott and Lancon, the parties to this action, the district court's judgment that Elliott's title is flawed is of obvious benefit to Lancon. The judgment establishes that Lancon's title is superior to the title of Frazier's ancestor in title, Elliott. Because the judgment rendered in favor of Lancon has potential concrete value to Lancon in his likely litigation with Frazier, we are unable to say that the judgment is useless.[2] Accordingly, we decline to apply the "useless judgment" exception and conclude that the district court did not lose jurisdiction when the LOIS B. was removed from the Southern District of Texas.

B.

Elliott also argues that the district court had no subject matter jurisdiction over Lancon's claim to the M/V LOIS B., because an admiralty court with in rem jurisdiction cannot hear equitable claims. We disagree.

Elliott's reliance on *Swift and Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), is misplaced. Swift held that an admiralty court may hear equitable claims, such as fraudulent transfer claims, as long as it has an independent basis of admiralty jurisdiction: "[t]he basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent admiralty claim." 339 U.S. at 694-95, 70 S.Ct. at 867-68. An admiralty court has the power to set aside a fraudulent transfer intended to evade a judgment in admiralty; "[w]ithout such power its jurisdiction would often be defeated." *Lee v. Thompson,* 3 Wood 167, 15 F.Cas. 233, 235 (C.C.D.La.1878) (No. 8202).

The district court in this case had in rem jurisdiction to adjudicate ownership of the LOIS B.

---

[2]We have not ruled on Frazier's motion to intervene. But the judgment may have value whether we ultimately permit the intervention and remand Frazier's claim to the district court or deny the intervention and Frazier files a new suit.

The court could not properly decide this issue without considering Lancon's contention that the transfer of the LOIS B. to Elliott was fraudulent. The fraudulent transfer inquiry is subsidiary to the primary issue the district court, sitting as an admiralty court, was authorized to decide. *Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d 240, 247-48 (2d Cir.1987).

### III.

Elliott argues next that we should remand this case for a new trial, because the original trial was tainted when Judge Kent failed to timely recuse himself under the mandatory recusal provisions of 28 U.S.C. § 455(b). We disagree.

Before the trial, Judge Kent disclosed to the parties that, while he was a partner at the law firm of Royston, Rayzor, Vickery and Williams, one of his partners had represented Lancon in related proceedings. Despite this disclosure, Elliott and Lancon expressly waived any objection to Judge Kent conducting the trial.

At the conclusion of the trial, Elliott moved for a new trial, in part, because Judge Kent's disqualification was mandatory and could not be waived. Judge Kent then recused himself, and the case was assigned to Judge Hoyt.

At a March 1991 hearing, Judge Hoyt announced his intention to rule on the new trial motion, based both on the existing record and any supplemental evidence the parties desired to introduce. He also gave Elliott the option of recalling any of Lancon's witnesses and cross-examining them. Elliott's attorney told the court that Elliott would call herself, Roy Robinson, Martin Snead, and possibly David Bartholomew. During hearings held in April and May of 1991, Elliott's attorney questioned all four of these witnesses. Elliott's attorney also introduced several documents into evidence after advising the court that he did not have any further witnesses.

Based upon the record, the supplemental testimony, and documentary evidence that the parties offered, the court denied Elliott's motion for a new trial. In so doing, the court reviewed each of Judge Kent's findings and the evidence supporting them. Notably, the court found that most, if not all, of the testimony of Elliott's witnesses was "totally untrue." Accordingly, the court found that the evidence presented did not "preponderate sufficiently" for it to grant a new trial, and that the

evidence did not refute or contradict Judge Kent's findings of fact. It is clear from Judge Hoyt's remarks that he independently reviewed the evidence and, based on that review, agreed with Judge Kent's findings and conclusions.

Our review of the record convinces us that Judge Hoyt in effect retried this case. Elliott had a full opportunity to present to Judge Hoyt the evidence that she considered material and helpful to her case. The court placed no limits on Elliott's opportunity to present evidence, and, in fact, asked Elliott's attorney repeatedly if he desired to call any more witnesses. Elliott took advantage of this opportunity, calling all of the witnesses that she had initially identified as necessary to her case. In addition, Elliott presented several items of documentary evidence to the court. Elliott does not suggest to us any additional evidence she would submit, if given an opportunity to do so. Elliott received the equivalent of a new trial. Therefo re we conclude that any violation of § 455 was properly remedied. *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855, 862-64 (1988).

## IV.

Elliott and Ross next challenge the district court's imposition of sanctions under Rule 11. We conclude that the district court properly sanctioned Elliott for the $35,000 representing Lancon's costs and attorney's fees. However, it was inappropriate to sanction Elliott under Rule 11 for the $60,000 sale price of the vessel. We are also persuaded that the district court erred in imposing sanctions against Ross.

Rule 11 authorizes the imposition of sanctions on an attorney and represented party when the attorney signs a "pleading, motion, or other paper": (1) without having first conducted a "reasonable inquiry" into whether it is "well grounded in fact"; (2) without having first conducted a "reasonable inquiry" into whether it is "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"; or (3) which is "interposed for purposes of delay, harassment, or increasing costs of litigation." *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 873-74 (5th Cir.1988) (en banc). Rule 11 imposes an objective standard of "reasonableness under the circumstances." *Id.* at 873 (citations omitted). We apply an abuse of discretion standard

"across-the-board to all issues in Rule 11 cases," recognizing that "[t]he trial judge is in the best position to review the factual circumstances and render an informed judgment" concerning such issues. *Id.* at 872-73.

The district court found that Elliott and Ross "filed documents that are misleading and border on perjury, particularly in violation of Rule 11." For example, the court found that Elliott's complaint falsely pleaded that Elliott had acquired title to the vessel from Martin Snead in 1987. In fact, as the district court observed, the attempted transfer from Snead to Elliott was fraudulent and accomplished with backdated documents.

Elliott argues that she does not deserve Rule 11 sanctions because she did not contribute to or know the content of the complaint that Ross filed in her behalf. We reject this argument. When a Rule 11 violation occurs, the district court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction...." Fed.R.Civ.P. 11.

The record belies Elliott's efforts to avoid responsibility for the complaint that Ross filed in her behalf. The chief misrepresentation in the complaint was that Elliott had owned the vessel in question since 1987. The district court found that Elliott knew this to be untrue. Moreover, Elliott maintained this position at the trial. During the hearings before Judge Hoyt, she testified that the vessel "was my boat," that she "authorized [Ross] to take care of protecting my interest in the tugboat," and that she reviewed the complaint after it was filed. The district court did not abuse its discretion in sanctioning Elliott.

Elliott argues that the district court should have reduced the sanctions award because Lancon did not bring his motion for Rule 11 sanctions soon enough after he discovered a basis for bringing that motion. She does not argue, however, that the district court erred in its calculation of Lancon's attorney's fees. The district court acted well within its abundant discretion in sanctioning Elliott for $35,000 in attorney's fees.

The district court also assessed Rule 11 sanctions against Elliott and Ross for $60,000, the sale price Elliott received for the vessel. Elliott contends that the district court improperly sanctioned her for this amount. We agree. Rule 11 sanctions should not be assessed as a substitute for tort

damages.

This Circuit has held that the purpose of Rule 11 is to deter groundless proceedings, and not necessarily to compensate wronged parties. *Thomas,* 836 F.2d at 877. We have also held that Rule 11 does not provide a basis for a cause of action in favor of a third party to recover for tort damages. *Port Drum Co. v. Umphrey,* 852 F.2d 148 (5th Cir.1988) (citing the Rules Enabling Act, 28 U.S.C. § 2072) (The rules of civil procedure "shall not abridge, enlarge or modify any substantive rights...."). In *Port Drum,* we noted that Rule 11 does not "confer new substantive rights," and that its primary purpose is not "to compensate wronged parties by means of affirmative relief." *Port Drum,* 852 F.2d at 150.

Other courts that have squarely addressed this issue have reached the same conclusion. For example, the Northern District of California refused to award damages for loss of business occasioned by the filing of a frivolous complaint. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 121 F.R.D. 402 (N.D.Cal.1988), aff'd in relevant part, 892 F.2d 802 (9th Cir.1989). The Supreme Court affirmed. In approving the district court's ruling it expressly rejected appellant's argument that Rule 11 created a federal common law of malicious prosecution. The Court stated:

> [W]e are confident that the District Courts will resist the temptation to use sanctions as substitutes for tort damages. This case is a good example. [Defendant] asked that the sanctions award include consequential damages, but the District Court refused. "[W]hile sympathetic to [defendant's] plight," the court was "not persuaded that such compensation is within the purview of Rule 11."

*Business Guides Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, ----, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140, 1160-61 (1991) (quoting the district court's opinion in *Business Guides,* 121 F.R.D. at 406).

Because the $60,000 sanctions award against Elliott and Ross is a substitute for tort damages and beyond the scope of Rule 11, it must be vacated.

Although the district court acted within its discretion when it sanctioned Elliott for $35,000 in attorney's fees and costs, it abused its discretion in finding that Ross violated Rule 11. The court criticized Ross for failing to properly investigate the facts and law supporting Elliott's claim before he filed suit. The court noted that Ross had testified in state court that he never directly conferred

with Elliott before filing suit. Moreover, as the court pointed out, Ross did not check the Coast Guard records of ownership of the vessel or review LOIS B. sales documents that existed when he undertook Elliott's representation. According to Ross, his investigation consisted only of calling a Bacliff Bank officer who told him that Elliott owned the vessel, and that the bank held a mortgage on the vessel.

Based on our review of the record, we see no reason to fault Ross for not checking the Coast Guard records of ownership; a thorough search of the Coast Guard records would have revealed that Elliott had filed documents reflecting her ownership of the vessel. Nor can we fault Ross for relying on the bank officer's statement that Elliott owned the vessel; the record does not show that Ross had any reason to know that officers of the bank had participated in the backdating of documents that facilitated the fraudulent transfer of the vessel to Elliott. Also, the backdated bill of sale was facially unremarkable.

The district court also made findings suggesting that Ross filed papers with the court for an improper purpose. For example, the district court found that Elliott and Ross had "filed documents that are misleading and border on perjury, particularly in violation of Rule 11." The court also stated to Ross, "You knew on the occasion that you filed this lawsuit ... that the sheriff had made a sale, which you had no authority to set aside, [and that] ... at the time that you filed this lawsuit, [Elliott] had not perfected any interest in this vessel."

We find no evidence in the record that supports the inference that Ross either participated in the fraudulent transfer of the vessel to Elliott or knew of the fraudulent nature of the transfer. Because we find no record support for the Rule 11 sanctions against Ross, they must be vacated.

V.

We have also considered Elliott's argument that we must defer to a Texas state court judgment which supposedly awarded Elliott title to the vessel before entry of the federal court judgment. The state court's order does not support Elliott's argument. It does not purport to adjudicate title. We therefore agree with the district court that the state court did not adjudicate this issue.

## VI.

For the reasons stated above, we affirm the judgment of the district court on the merits. With respect to sanctions, we affirm the $35,000 sanction award against Elliott;  we reverse the $60,000 sanction award against Elliott;  we reverse the entire sanction award imposed against Ross.

AFFIRMED in part and REVERSED in part.