455 F.2d 133
 Bruce GOLDEN et al., Appellants,
v.
OIL SCREW FRANK T. SHEARMAN (formerly John T. Lillis,
formerly Lincoln Park No. 1, formerly Timothy J. O'Byrne),
her engines, tackle, etc., in rem, and Tidewater Towing
Company, Inc., in personam, Appellees.
 No. 71-1739.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 9, 1971.
Decided Feb. 10, 1972.
 
 Stuart V. Carter, Norfolk, Va. (Breit, Rutter, Montagna & Carter, Norfolk, Va., on brief), for appellants.
 George W. Birkhead, Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellees.
 Before WINTER, CRAVEN and FIELD, Circuit Judges.
 PER CURIAM:
 
 
 1
 On this appeal the appellant wage claimants challenge the action of the District Court in denying their motion to set aside the sale of the Tug Frank T. Shearman which sale had been made pursuant to an order of the Court incident to a proceeding for enforcement of a preferred ship mortgage under 46 U.S.C.A. Sec. 951. The District Judge based his action primarily upon the failure of appellants to file exceptions to the sale within two days thereafter as required by Local Admiralty Rule 5(b) of the Eastern District of Virginia.[1] Appellants contend that the gross inadequacy of the sale price denied them the benefit of their preferred maritime wage liens under 49 U.S.C.A. Sec. 953, and accordingly the court below should have relaxed the rigid application of Rule 5(b). Under the circumstances of this case we conclude that the District Judge did not abuse his discretion in denying the motion.
 
 
 2
 On April 26, 1971, C.I.T. Corporation, as holder of a note made by Tidewater Towing Company, Inc. payable to Western Branch Diesel, Inc. and as assignee of a first preferred ship's mortgage on the Shearman, filed suit to enforce the mortgage against the Shearman in rem and Tidewater in personam. At the time the suit was instituted the amount due from Tidewater on the secured note was $109,908.28.
 
 
 3
 The Shearman was attached by the U.S. Marshal on April 27, 1971, and thereafter the plaintiff followed the statutory steps to effect the sale of the vessel. Subsequent to the order of attachment the appellant wage claimants filed motions to intervene as parties plaintiff, the aggregate of their claims being approximately $6,000.00. On June 1, 1971, a decree was entered directing the Marshal to sell the Shearman at public auction on June 8, 1971. The decree specified the conditions of the sale and, among other things, directed that notice thereof be published in the Norfolk Virginian Pilot for a period of five days. The decree of sale as entered was endorsed not only by counsel for C.I.T. Corporation, but also by counsel for the intervening wage claimants.
 
 
 4
 On June 8, 1971, the Shearman was offered for sale pursuant to the decree and although there were several persons in attendance the only bid offered was by Western Branch in the amount of $1,000.00. No other bids having been made, the Marshal accepted the bid of Western Branch and on the same date filed a report of sale with the Clerk of the District Court. So far as the record discloses, none of the wage claimants or their counsel attended the sale or took any steps to protect their interests until June 17, 1971, when the motion to set aside the sale was filed.
 
 
 5
 Concededly, the Shearman had a value far in excess of the $1,000.00 sale price. However, under the circumstances of this case, this facial inadequacy of price is not necessarily determinative. As heretofore stated, the amount due from Tidewater on the secured note was approximately $110,000.00. At the time of the sale Tidewater was hopelessly insolvent and Western Branch, as endorser of the note, was faced with liability to C.I.T. Corporation for the full balance. Under these circumstances, Western Branch was in a position to bid any amount up to the outstanding balance of the secured note and merely credit the bid price against the note. The only parties who were in a position to force Western Branch to make more than a minimal bid at the sale were the appellant wage claimants who were entitled to priority in the proceeds of the sale ahead of the ship mortgage. However, as heretofore stated, either through negligence or some other reason the intervenors failed to attend the sale or offer a protective bid in the amount of the aggregate of their wage claims. Neither the appellants nor their counsel are in a position to complain of lack of notice since the decree of sale was endorsed by their counsel and the sale itself was advertised for a period of five days pursuant to the terms of the decree.
 
 
 6
 The initial neglect of appellants in failing to attend the sale or take other protective measures was compounded by their failure to file any motion within the period required by Rule 5(b). The reason underlying the Rule is obvious. Vessels have value only when in use and when lying idle at the dock not only do they produce no income, but dockage fees and expenses for maintenance and protection continue to mount. Accordingly, it is desirable that a judicial sale of a vessel should stand confirmed and the vessel delivered to the purchaser as promptly as possible. In the present case the Shearman had been under attachment and out of operation from April 27, 1971, until June 10th, and the application of Rule 5(b) to the sale was certainly appropriate.
 
 
 7
 While we are not insensitive to the plight of appellants and the high priority which the law accords to seamen's wage liens, we do not feel that the circumstances of this case required that the District Judge relax the application of the Rule. Disposition of a motion such as that tendered by the appellants is a matter that falls within the judgment and discretion of the Court which ordered the sale, and the exercise of such discretion should not be disturbed by an appellate court except in cases of abuse. We find no such abuse in this case. See American Tramp Ship. & Dev. Corp. v. Coal Export Corp., 276 F.2d 570 (4 Cir. 1960); American Trading & Production Corporation v. Connor, 109 F.2d 871 (4 Cir. 1940).
 
 
 8
 The order appealed from will be affirmed.
 
 CRAVEN, Circuit Judge (dissenting):
 
 9
 Wages of seamen occupy a unique status. The statutory provision extending them the protection of a preferred maritime lien is deeply rooted in history. Seamen's wages, "according to the favorite saying of Lord Stowell and of Mr. Justice Story, are sacred liens, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages." The John G. Stevens, 1898, 170 U.S. 113, 119, 18 S.Ct. 544, 42 L.Ed. 969. The statutes throw around seamen's wages most definite, detailed, and stringent protections from faraway owners of vessels, from ship-masters, and from the seaman himself.
 
 
 10
 Brandon v. SS Denton, 302 F.2d 404, 416 (5th Cir. 1962).
 
 
 11
 Seamen are wards of the admiralty court and entitled to its protection. I find it incredible that such protection should be forfeited by failure of seamen to dot an "I" or cross a "T" of a local procedural rule.
 
 
 12
 This is not a case where the concerned parties were unaware of the seamen's wages claimed. Everyone knew of the unpaid wage claims ($7,087.68), including the United States Marshal, whose acceptance of the bid under such circumstances is simply unbelievable. One wonders if a bid of $1 would have been accepted.
 
 
 13
 Instead of asking that the sale be set aside within two days, as permitted by Local Rule 5, the seamen made such a motion within nine days. Having knowledge of their intervention, it seems to me the court on its own motion would have interposed exception to the sale.
 
 
 14
 Apparently the district judge refused to even "entertain" the motion to set aside the sale.[1] If so, his error was thus one of law: an interpretation of a local rule as preventing the exercise of discretion. The fact that Western Branch bid in the tug purely to protect its interest in the note to C.I.T., and that no other company could bid against a security interest of $109,000, because the tug wasn't worth that much, is the type of circumstance tending to cause the inadequacy of price which should compel setting the sale aside. "While a judicial sale will not be set aside on the ground of inadequacy of price alone, unless the inadequacy is so great as to shock the conscience of the chancellor, inadequacy of price, accompanied with other circumstances having a tendency to cause such inadequacy, or indicating any apparent unfairness or impropriety, will justify setting aside the sale." Allen v. Union Transfer Co., 152 F.2d 633, 635 (10th Cir. 1945).
 
 
 15
 I think seamen as wards of admiralty are due greater consideration on their wage claims than they now receive.
 
 
 
 [1]
 Local Admiralty Rule 5 of the United States District Court for the Eastern District of Virginia reads in its entirety as follows:
 RULE 5-SALES BY THE MARSHAL AND CONFIRMATION THEREOF
 (a) All sales shall be made by the marshal of this Court, subject to confirmation by the Court, and after notice consisting, unless otherwise ordered, at least of posting a notice on said bulletin board and publication thereof once in the newspaper hereinbefore designated, giving the time, terms and place of sale, and no sale shall be made before the sixth day after the last posting and publication of said notice.
 (b) The marshal shall file with the clerk on the day of sale his report thereof, and it shall lie for the two days immediately thereafter for exceptions. If no exceptions are filed, the sale shall stand confirmed as of course. If exceptions are filed within the said two days, the clerk shall at once submit the report and exceptions to the court. The marshal may decline to knock down a vessel or other property to the highest bidder when the highest bid, in his opinion, is grossly inadequate.
 
 
 [1]
 THE COURT: All right. The second thing that comes to my mind, Mr. Rutter, and I don't have the local rule in front of me. But if I recall the law, it says that an upset bid on a sale must be made within forty-eight hours. Do you know what rule that is?
 MR. RUTTER: Rule 5.
 THE COURT: Which is a local rule?
 MR. RUTTER: Local Admiralty Rule.
 THE COURT: Local Admiralty Rules indicate that an upset bid must be put in within forty-eight hours after the sale took place. This sale took place on June 8, and the question of setting it aside is more than forty-eight hours past. So on that basis I would not entertain your motion to set it aside.
 Secondly, for the purposes of appeal, I know the tug SHEARMAN from just casual observation, and while I would not say that, I would not be able to appraise it in ship's language, for the purposes of the record I will assume that the vessel is worth at least twenty-five thousand dollars.
 Appendix p. 8.