**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 98-20329

BARGECARIB INCORPORATED,

Plaintiff - Appellant,

VERSUS

OFFSHORE SUPPLY SHIPS INCORPORATED, in personam; THE M/V
SOVEREIGN, her engines, tackle, apparel, etc., in rem;

Defendants - Appellees,

GLOBAL TOWING, L.L.C.,

Claimant - Appellee.

Appeal from the United States District Court
for the Southern District of Texas

March 4, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

BargeCarib Inc. ("BargeCarib") filed a complaint in rem
against the M/V Sovereign ("Sovereign") and in personam against the
Sovereign's owner Offshore Supply Ships Inc. ("Offshore"), alleging
breach of a time charter. The Sovereign was arrested, then
released after subsequent proceedings when the district court
concluded Offshore did not breach the charter. BargeCarib appeals
the order vacating seizure and denying return of the vessel.

Because Offshore breached the charter, we reverse the order vacating seizure, and remand to the district court for further proceedings. We lack authority to compel return of the vessel. Global Towing, LLC ("Global"), which purchased the Sovereign from Offshore during the duration of the charter and owned the Sovereign at the time of seizure, moved for damages, sanctions, costs, attorneys' fees and other expenses under Federal Rules of Appellate Procedure 38 and 39, and Federal Rule of Civil Procedure 11. We deny Global's motion.

BACKGROUND

On August 15, 1996, BargeCarib executed a time charter agreement ("Charter") with Offshore. Offshore's vessel the Sovereign would tow BargeCarib's ocean-going barge LaurieKristie for a period of one year with an option to extend for one year. The Charter permitted Offshore to substitute a similar vessel of comparable power at anytime, subject to BargeCarib's approval, which could not be unreasonably withheld.

On May 20, 1997, Global bought the Sovereign from Offshore while the vessel was at sea under the time charter, and informed BargeCarib of the purchase. Offshore and Global entered into an agreement permitting the Sovereign to complete its then current voyage.

On June 19, Raymond Ledoux of Offshore confirmed the sale of

the Sovereign, and met with David Kay of BargeCarib to discuss substitute vessels. In early July, Offshore proposed several substitute vessels. BargeCarib objected to these vessels and stated that it would not release Offshore from the Charter unless Offshore substituted an acceptable vessel. On July 7, Offshore informed BargeCarib that the Sovereign would make BargeCarib's next scheduled voyage. During the week of July 10, Global also informed BargeCarib that the Sovereign would make the next voyage. In reliance on these assurances, Kay ordered the LaurieKristie fully loaded.

On July 9-10, BargeCarib contacted Hillman of Global and requested that the voyage commence. Global refused to order the Sovereign to commence unless BargeCarib agreed to release the Sovereign from any further obligations under the Charter.

On July 10, BargeCarib filed a Verified Complaint alleging that Offshore breached the Charter and asserting a maritime lien on the vessel to secure the performance of the Charter.[1] The complaint asserted an in rem claim against the Sovereign and an in personam claim against Offshore. The magistrate judge granted a Writ of Seizure, and the U.S. Marshal arrested the Sovereign. Offshore filed an emergency motion to vacate the arrest, and Global filed various motions, including an emergency motion to vacate the

---

[1]BargeCarib represented to the Court that it had made a present demand on Offshore that the Sovereign undertake a voyage to Haiti under the Charter and that Offshore refused to commence the voyage.

arrest and dismiss BargeCarib's complaint.

The magistrate judge held a hearing to allow BargeCarib to show probable cause for the arrest, and found that BargeCarib's Complaint was factually inaccurate.[2] The magistrate judge ordered vacature of the seizure and immediate release of the vessel. BargeCarib objected, claiming that vacating the order was a dispositive action beyond the scope of the magistrate judge's authority. The magistrate judge disagreed, and released the Sovereign.

BargeCarib appealed the magistrate judge's order to the district court. The district court vacated the magistrate judge's order vacating seizure. BargeCarib then moved for return of the Sovereign. Offshore and Global moved for reconsideration and objected to the return of the vessel. The district court granted the motion to reconsider. After reviewing the magistrate judge's order <u>de novo</u>, the district court entered an order accepting and adopting the magistrate judge's order vacating seizure and denying BargeCarib's motion for return of the vessel. BargeCarib appeals the district court's orders vacating seizure and denying return of the vessel. BargeCarib did not seek a stay of the district court's order pending appeal.

<u>STANDARD OF REVIEW</u>

---

[2]The magistrate judge found that BargeCarib had made no present demand on Offshore.

4

We review de novo the district court's legal conclusion that Offshore did not breach the Charter. See E.A.S.T., Inc. of Stamford, Conn. v. M/V ALAIA, 876 F.2d 1168, 1171 (5th Cir. 1989) (noting that, in admiralty cases, the standard of review is de novo for questions of law and clearly erroneous for findings of fact).

ANALYSIS

The district court released the Sovereign, the res at issue in this in rem proceeding. However, removal of the res does not necessarily divest the court of jurisdiction. Once proper seizure establishes jurisdiction, the court maintains jurisdiction until the litigation ends, unless a judgment would be "useless." See Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 84-89 (1992); Elliott v. M/V LOIS B, 980 F.2d 1001, 1004-05 (5th Cir. 1993). The "useless" exception "will not apply to any case where the judgment will have any effect whatever." Republic Nat'l Bank of Miami, 580 U.S. at 85 (citing language in the opinion of Chief Justice Marshall sitting as a Circuit Justice in United States v. The Little Charles, 26 F.Cas. 979, 982(C.C.Va. 1818)(No. 15,612)). Whether the Sovereign was properly seized turns on whether Offshore breached the Charter, giving rise to a maritime lien. Thus, the jurisdictional issue will turn, in part, on a resolution of the merits.

A maritime lien "affords special protection to the party who

5

has been injured by a breach of contract . . . ." E.A.S.T., Inc. of Stamford, Conn., 876 F.2d at 1174; see also Cardinal Shipping Corp. v. M/S SEISHO MARU, 744 F.2d 461, 466 (5th Cir. 1984) (noting that a maritime lien "arises by operation of law to provide security to the victims of certain maritime . . . contract breaches."). Breach of a time charter by the owner gives rise to a maritime lien as long as the vessel has been delivered to the charterer and the contract is no longer executory. See E.A.S.T., Inc. of Stamford, Conn., 876 F.2d at 1175-76. A maritime lien entitles the charterer to proceed in rem directly against the vessel. See Cardinal Shipping Corp., 744 F.2d at 466.

On July 7, Offshore informed BargeCarib that the Sovereign would make BargeCarib's next scheduled voyage. During the week of July 10, Global confirmed that the Sovereign would make BargeCarib's next voyage. On July 9-10, BargeCarib contacted Hillman of Global and requested that the voyage commence. Despite Offshore's arguments to the contrary,[3] BargeCarib's demand on Hillman constituted a demand for performance under the Charter: Offshore and Global had agreed that the Sovereign would make the journey, and BargeCarib made the demand on the only party capable of ordering the Sovereign to commence the journey. Hillman's

---

[3]Offshore argues that BargeCarib made a demand on Global, not Offshore. Further, Offshore insists that, had BargeCarib made a demand directly on Offshore, Offshore would have performed either by securing the services of the Sovereign or by securing a substitute vessel.

refusal to order the Sovereign to commence constituted breach of the Charter.

Global argues that it purchased the Sovereign free and clear of the Charter. This argument is not persuasive. A maritime lien "rests upon the fiction of the personality of the vessel. . . . [I]t is based . . . on the fiction that the vessel may be a defendant in a breach of contract action when the vessel itself has begun to perform under the contract." E.A.S.T., Inc. of Stamford, Conn., 876 F.2d at 1174. Although Global may have purchased the Sovereign free of any *personal* obligations under the Charter (an issue we need not decide), the purchase could not terminate *the Sovereign's* obligations under the Charter. Global's refusal to order the Sovereign to commence unless BargeCarib agreed to release the Sovereign from any further obligations under the Charter represents Global's tacit acknowledgment of the Sovereign's continuing obligations.

Offshore argues that BargeCarib breached the Charter prior to the Sovereign's failure to commence by refusing to accept Offshore's tender of substitute vessels. The Charter permitted Offshore to "substitute a similar tug or tugs of comparable power at any time. . . . However, any such substitution . . . is subject to charterer's prior approval; but such approval shall not be unreasonably withheld." Because Offshore proffered "substitutes" requiring terms and rates less favorable to BargeCarib than the

7

Charter, BargeCarib's refusal to approve these substitutes was not "unreasonable." BargeCarib did not breach the Charter by refusing Offshore's proffered substitutes.

This court has continuing jurisdiction despite the absence of the res. First, Offshore's breach of the Charter gave rise to a maritime lien permitting an in rem action by BargeCarib. Therefore, the court properly had jurisdiction over the res at the commencement of the suit. Second, the judgment that Offshore breached the Charter is not useless. BargeCarib may use this judgment as a basis for re-seizing the Sovereign should it return to an American port, and as a basis for pursuing Offshore personally. See Elliott, 980 F.2d at 1005 (noting that the judgment was not useless because it "ha[d] potential concrete value" in the plaintiff's likely litigation with a third party).

BargeCarib cites no persuasive precedent for our authority to compel return of the Sovereign. Although we agree that BargeCarib has a valid maritime lien against the Sovereign, our jurisdiction does not extend to compelling the return of the vessel. We reverse and remand to the district court for further proceedings.

We deny Global's motion for damages, sanctions, costs, attorneys' fees and other expenses under Federal Rules of Appellate Procedure 38 and 39, and Federal Rule of Civil Procedure 11.

**REVERSE** and **REMAND**