# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 15, 2013

No. 12-30891

Lyle W. Cayce
Clerk

COMMUNITY BANK OF LAFOURCHE,

Plaintiff - Appellee

v.

LORI ANN VIZIER, INCORPORATED, ETC., ET AL,

Defendants

v.

KEVIN GROS OFFSHORE, L.L.C.,

Intervenor - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-630

Before STEWART, Chief Judge, and KING and PRADO, Circuit Judges.

PER CURIAM:[*]

Community Bank of Lafourche sued the M/V MARY ANN VIZIER and its owner, Lori Ann Vizier, Inc., to recover amounts secured by a preferred ship mortgage against the M/V MARY ANN VIZIER.  Kevin Gros Offshore, L.L.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30891

intervened, asserting an *in rem* claim for Lori Ann Vizier, Inc.'s breach of an alleged bareboat charter.  Kevin Gros Offshore asserted that the breach of the charter gave rise to a maritime lien that took priority over the lien of Community Bank of Lafourche's preferred ship mortgage.  After the district court granted summary judgment dismissing Kevin Gros Offshore's claim, the M/V MARY ANN VIZIER was sold at a U.S. Marshal's sale.  Community Bank of Lafourche purchased it through a credit bid.

Kevin Gros Offshore brings this appeal challenging the district court's dismissal of its *in rem* claim.  Community Bank of Lafourche moves to dismiss the appeal under the "useless judgment" exception to our *in rem* jurisdiction.  We agree that a judgment in favor of Kevin Gros Offshore would, indeed, be useless, and we DISMISS this appeal.[1]

## I.  BACKGROUND

On February 16, 2007, Kevin Gros Offshore, L.L.C. ("Gros"), and Lori Ann Vizier, Inc. ("Vizier") entered into a "Bareboat Charter and Vessel Management Agreement" ("the Agreement") for the M/V MARY ANN VIZIER ("the Vessel"). Under the Agreement, Gros was responsible for: (1) providing the Vessel with a captain and crew; (2) paying all taxes, fees, and insurance for the crew; (3) ensuring the Vessel was properly maintained; (4) maintaining a valid U.S. Coast Guard Certificate of Inspection; (5) securing liability, hull, and pollution insurance for the Vessel; and (6) directing the Vessel's daily operations and navigation.  Gros also agreed to pay Vizier any revenue it received from customers.  In exchange, Gros was to be paid a "brokerage fee" and reimbursed

---

[1] Community Bank of Lafourche has moved to file a surreply brief.  That motion is granted.

No. 12-30891

by Vizier for its expenses. Vizier allegedly breached the Agreement with Gros by failing to compensate Gros for the Vessel's operating expenses. On May 28, 2010, Gros filed a Notice of Lien against the Vessel with the U.S. Coast Guard.

On May 8, 2008, Vizier borrowed a $500,000 loan from Community Bank of Lafourche ("Community Bank"). Vizier executed a promissory note that was secured by a preferred ship mortgage on the Vessel. The mortgage was recorded with the U.S. Coast Guard on May 9, 2008, under the Commercial Instruments and Maritime Liens Act, 46 U.S.C. §§ 31301–31343. Vizier and Community Bank renewed the loan through a July 24, 2009 promissory note secured by the mortgage on the Vessel. On April 24, 2010, Vizier defaulted on its loan obligations to Community Bank.

Community Bank filed an *in rem* action in federal court against the vessel and an *in personam* action against its owner, Vizier, for $469,170.73 allegedly owing on the note, as well as interest and attorney's fees. Community Bank alleged that it had a preferred ship mortgage on the Vessel and that Vizier had defaulted on its payments. The Vessel was arrested by the marshals on July 29, 2011. Notice of the arrest was properly given according to the admiralty rules. On August 31, 2011, Gros intervened to assert an *in rem* claim against the Vessel for Vizier's breach of the Agreement. Gros alleged that it was owed $300,772.42. Gros also alleged that the Agreement was a bareboat charter[2],

---

[2] A demise or "bareboat" charter is:

the lease of a ship, usually on a long-term contract, often associated with a special finance or purchase arrangement. In a demise charter, it is up to the charterer to man and equip the vessel . . . . Although the owner retains legal title, the charterer is considered the temporary owner, or commonly termed the owner *pro hac vice*.

3

No. 12-30891

which gave rise to a maritime lien against the vessel, that this lien was retroactive to the date of execution of the Agreement, and that the lien had priority over Community Bank's preferred ship mortgage.

On September 12, 2011, the district court authorized an interlocutory sale of the Vessel "subject to any final ruling of the Court on priority and amount of liens and mortgages." After Vizier failed to defend the suit, the court entered a default judgment for Community Bank against Vizier and the Vessel.

Community Bank moved for summary judgment on Gros's claims in intervention. Community Bank argued that the Agreement between Gros and Vizier was not a charter agreement that would have given rise to a maritime lien. According to Community Bank, the Agreement was a boat management agreement that could not be the basis for a maritime lien. Gros opposed summary judgment on the ground that the Agreement was a bareboat charter. In May 2012, the district court granted summary judgment dismissing Gros's claims. The district court found that the Agreement included both charter and management provisions and that, because Gros's claims arose from the management provisions, it could not assert a maritime lien against the vessel.

After the district court's decision, Community Bank advertised a U.S. Marshal's sale of the Vessel scheduled for June 7, 2012. The deadlines for Gros to move for a new trial on the district court's order and to appeal had not passed by the sale date. Gros did not make an objection prior to the sale. Community Bank was the sole bidder, and it purchased the Vessel through a credit bid in the amount of its $525,000 judgment lien. Gros was not present at the sale and did not bid.

---

2 Thomas J. Schoenbaum, Admiralty & Marine Law, § 11–3 (4th ed. 2004).

No. 12-30891

On June 12, 2012, Gros moved for a new trial under Federal Rule of Civil Procedure 59. A week later, Community Bank moved to confirm the sale free of all liens and claims against it. Gros opposed the motion on the ground that confirming the sale without requiring Community Bank to post a substitute *res* would terminate the court's jurisdiction over the *res* and prevent Gros from appealing the district court's decision dismissing its claims. Gros stated that the "Court's constructive possession over the [Vessel], *in rem*, is the sole source of the Court's jurisdiction over [Gros's] Claim in Intervention asserting a maritime lien against the [V]essel." Gros cautioned that "[i]f this Court grants the Bank's instant Motion to Confirm the Sale of the [Vessel], without placing any funds into the registry of the Court (the funds from the sale) or any other alternative res (e.g., bond, letter of undertaking, etc.), it would effectively allow the basis of the Court's jurisdiction over [Gros]'s claim to 'sail away.'" Gros did not post a supersedeas bond, nor did it file a separate motion to stay confirmation of the sale.

On August 1, 2012, the district court granted Community Bank's motion to confirm the sale of the Vessel and ordered the marshals to issue a bill of sale to Community Bank. The district court also denied Gros's motion for new trial. Final judgment was entered the following day. On August 10, 2012, the marshals issued a bill of sale providing that the Vessel had been sold free and clear of all preexisting liens and claims.

Gros timely appealed. It contends that the district court erred in deciding that the Agreement included the elements of both a bareboat charter and a vessel management agreement, and that Gros could not assert a maritime lien against the vessel. Community Bank moves to dismiss the appeal for lack of

No. 12-30891

jurisdiction. It argues that because the vessel was sold at a marshal's sale after the district court granted summary judgment, this court lacks *in rem* jurisdiction under the useless judgment doctrine. Community Bank's motion was carried with the case.

## II. DISCUSSION

Because Community Bank's motion to dismiss under the useless judgment doctrine implicates our jurisdiction over this appeal, we must address it before considering the merits. *Seales v. Holder*, 354 F. App'x 875, 877 (5th Cir. 2009). Community Bank contends that the useless judgment doctrine precludes appellate court jurisdiction of any appeal arising from the dismissal of an *in rem* maritime claim after a marshal's sale of the *res,* free and clear of all liens, has occurred in accordance with the federal admiralty rules.

The Supreme Court has provided some guidance on this issue. In *Republic National Bank of Miami v. United States*, 506 U.S. 80 (1992), the Court considered whether jurisdiction remained over an *in rem* civil forfeiture proceeding after the *res* had been removed by the U.S. Marshals from the judicial district and deposited in the U.S. Treasury. The government initiated a civil forfeiture proceeding in federal court against a home that had allegedly been purchased with profits from drug sales. *Id.* at 82. Republic National Bank of Miami intervened, asserting that it had a mortgage lien against the home. *Id.* The bank and the government agreed to an interlocutory sale of the property, which the court approved, and the sale proceeds were placed into the custody of the marshals pending the outcome of the suit. *Id.* at 82–83. After a trial on the merits, the court denied the bank's claim. The bank timely appealed but did not post a supersedeas bond or seek to stay execution of the judgment, and the

marshals transferred the sale proceeds to the U.S. Treasury. *Id.* at 83. On appeal, the government argued that the removal of the sale proceeds from the district terminated jurisdiction. The Eleventh Circuit agreed and dismissed the appeal. *Id.*

The Supreme Court granted certiorari and reversed the dismissal. Noting that a civil forfeiture proceeding under 21 U.S.C. § 881(a)(6) is an *in rem* action, "which shall conform as near as may be to proceedings in admiralty," *id.* at 84 (quoting 28 U.S.C. § 2461(b)), the Court then looked primarily to nineteenth century cases addressing jurisdiction over maritime suits. Reviewing those decisions, the Court found no legal principle requiring a court to possess continuous control of the *res* in order to maintain jurisdiction. *Id.* It found, instead, that "[t]he fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to continue to furnish remedies for aggrieved parties not to provide a prevailing party with a means of defeating its adversary's claim for redress." *Id.* at 87 (internal citations omitted). The Court held that, while "it long has been understood that a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding," *id.* at 84, a court's jurisdiction over the res, once established, remains until the termination of the suit, *id.* at 88–89.

Nevertheless, the Court identified a narrow "useless judgment" exception to the general rule that jurisdiction depends exclusively on possession of the *res* at the initiation of a suit. *Id.* at 84. The Court explained that a judgment would be useless if a plaintiff abandons a seizure or if a "'defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect.'" *Id.* at 87 (quoting *United States v. One Lear Jet, Serial No. 35A-280, Registration*

*No. YN-BVO*, 836 F.2d 1571, 1579 (11th Cir. 1988) (Vance, J., dissenting)). Although the Court discussed the useless judgment rule only briefly, it noted that "[t]hese exceptions . . . are closely related to the traditional, theoretical concerns of jurisdiction: enforcement of judgments and fairness of notice to parties." *Id.* The Court further stated that "this exception 'will not apply to any case where the judgment will have any effect whatever.'" *Id.* at 85 (quoting *United States v. The Little Charles*, 26 F. Cas. 979, 982 (C.C. Va. 1818)).

The Court found that the useless judgment rule did not apply under the circumstances of the case. The government had argued that, under the Constitution's Appropriations Clause, U.S. Const. art. I, § 9, cl. 7, once deposited into the U.S. Treasury, the sale proceeds could be released only through a congressional appropriation. According to the government, because no such appropriation had been made, the government and the Court both lacked the authority to release the proceeds to the bank, even in the event that the bank prevailed on appeal in the underlying forfeiture action. *Id.* at 89. The Court disagreed, concluding that 28 U.S.C. §§ 2414 and 2465 specifically authorized the government to pay the proceeds of the sale out of the Treasury. *Id.* at 95–96.

Since *Republic*, we have had several occasions to address the useless judgment exception. In *Elliott v. M/V Lois B*, 980 F.2d 1001 (5th Cir. 1993), we considered whether a district court retained jurisdiction over an *in rem* maritime suit even if the court no longer had possession of the *res* or knowledge of its whereabouts. In that case, in order to escape the reach of creditors, a tugboat owner fraudulently transferred a vessel. *Id.* at 1003. After a creditor obtained a writ of execution in state court, the sheriff of the county in which the boat was located obtained possession of the vessel. The vessel was then fraudulently

No. 12-30891

transferred a second time to the new owner's mother, Elliott, who filed an *in rem* action in federal court. *Id.* Subsequent to the filing of the federal suit, but before the U.S. Marshals took possession of the vessel, the vessel was purchased at a sheriff's sale by Donald Lancon. *Id.* Several days later, the marshals seized the vessel, and Lancon filed an *in rem* claim to recover it. Shortly afterward, the marshals exhausted the money that Elliott paid for the costs of seizure. *Id.* At the marshal's request, the magistrate judge released the vessel. Elliott took custody and sold the vessel without court approval. After several subsequent transfers, the vessel disappeared, and Elliott voluntarily dismissed her *in rem* claim. *Id.* A trial was held on the merits of Lancon's claim, and the trial court awarded him title. *Id.* at 1004. Elliott appealed arguing, in part, that the district court lost *in rem* jurisdiction to determine title once the court and marshals released the boat. *Id.*

We found *Republic* dispositive on the issue of the court's authority to continue to exercise its jurisdiction over the suit. We explained that "once jurisdiction is established by seizure of the res, the court ordinarily maintains jurisdiction until the litigation ends." *Id.* at 1005 (discussing *Republic*, 506 U.S. at 84). Acknowledging that Elliot "could make a colorable argument that the judgment of the court declaring Lancon the owner of the [vessel] was useless when it was rendered," we nevertheless declined to dismiss. *Id.* at 1004. We explained that we could not "say that the district court's judgment in this case will have no effect whatever" because "[r]ecent developments in this case demonstrate how this judgment could benefit Lancon in a concrete way." *Id.* at 1005. After the suit was appealed, an alleged good faith purchaser of the vessel had moved to intervene. The trial court's judgment, which established that

9

No. 12-30891

Lancon had superior title to Elliot, was not useless because "the judgment rendered in favor of Lancon has potential concrete value to Lancon in his likely litigation with [the alleged good faith purchaser]." *Id.* at 1005.[3]

We addressed the useless judgment exception again in *Newpark Shipbuilding & Repair, Inc. v. M/V Trinton Brute*, 2 F.3d 572 (5th Cir. 1993) (per curiam). Newpark was a creditor who brought an *in rem* action against a vessel. *Id.* at 572. The vessel's owner, McKinney, entered a restricted appearance to defend against the claim. The district court considered the merits and entered judgment in Newpark's favor. It then ordered the vessel sold at a marshal's sale, at which Newpark was the successful bidder. *Id.* McKinney moved to stay disbursement of the sale proceeds, which the district court denied. Newpark partially scrapped the vessel, and resold what remained to McKinney. *Id.* When McKinney appealed the district court's judgment in favor of Newpark, Newpark moved to dismiss for want of jurisdiction. *Id.*

We granted Newpark's motion to dismiss the appeal, concluding that a judgment in McKinney's favor "would be effectively unenforceable" because "there is nothing in Newpark's possession that could be regarded as the res." *Id.* at 573. We distinguished *Republic*, noting that "in this case, by contrast, there never was a substitute res." *Id.* We further explained that "the vessel is no

---

[3] *See also Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 (5th Cir. 2010) (declining to dismiss a *quasi in rem* suit under the useless judgment exception after the *res* had been shipped outside this court's jurisdiction because the claimant posted a bond covering demurrage and detention charges and "[w]hich party receives the benefit of the security is an issue that renders the case still a live controversy"); *P.R. Ports Auth. v. BARGE KATY-B*, 427 F.3d 93, 102 (1st Cir. 2005) (holding that the useless judgment exception did not apply because, even though the vessel at issue had left U.S. territorial waters, a judgment "could serve as a basis either for re-arresting the barge at any American port or for an in personam action against the barge's owner").

No. 12-30891

longer the res . . . [because] a marshal's sale discharges all liens against the ship and granted the purchaser title free and clear of all liens." *Id.* (citing Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty § 9-85 (1975)). As a result, "[u]nlike the situation in *Republic*, we [could not] trace the res or its proceeds to a particular fund in Newpark's possession." *Id.* Permitting McKinney to recover, despite the marshal's sale, effectively would require the court "to convert the judgment from one in rem to a judgment in personam." *Id.* We declined the invitation to so extend *Republic*'s holding. *Id.* We also distinguished our prior decision in *Elliott*, noting that in this case there was no showing that McKinney "could use the judgment in likely litigation with a subsequent purchaser of the vessel." *Id.* at 573 n.1.

In *Eurasia International, Ltd. v. Holman Shipping*, 411 F.3d 578 (5th Cir. 2005), we dismissed another suit under the useless judgment exception. Eurasia, a creditor, filed an *in rem* claim against a vessel to recover its unpaid expenses under a ship management agreement. Several other creditors intervened, asserting various claims. *Id.* at 580. The U.S. Marshals arrested the vessel and sold it at auction, depositing the sale proceeds into the district court's registry. The sale proceeds were insufficient to fully compensate all of the claimants. *Id.* After the sale, the vessel's owner brought an *in personam* claim against Eurasia. The district court stayed the *in rem* action pending arbitration of the owner's *in personam* claim. Eurasia prevailed in the arbitration, and the district court lifted the stay on the *in rem* action. *Id.* The district court granted summary judgment in favor of the intervenors and denied Eurasia's claim. *Id.* at 581. Eurasia moved the district court for an order staying the disbursement of the sale proceeds. The court granted the order, giving Eurasia an opportunity

11

to post a supersedeas bond. Eurasia, however, failed to timely post the bond, and the district court ordered the sale proceeds disbursed in accordance with its summary judgment order. *Id.* Eurasia appealed the district court's denial of its claims. In response, the intervenors argued that Eurasia's failure to stay enforcement of the district court's final judgment, and the clerk's distribution of the sale proceeds, rendered any appeal judgment useless. *Id.*

We found that the case fell within the purview of the useless judgment rule as explained in *Republic* and *Newpark*. We explained that "although the substitute res, the proceeds from the sale, were distributed to the Intervenors, we do not know if they still have the substitute res in their possession." *Id.* at 584. These facts were distinguishable from those in *Republic* in at least two significant ways. First, we noted, "the substitute res here is money, which is fungible, and unlike in *Republic*, the proceeds here cannot be traced to a particular fund in the Intervenors' possession." *Id.* Second, "unlike in *Republic*, there is no statute allowing this court to reach the proceeds once paid out." *Id.* As a result, any judgment "would be effectively unenforceable because, like *Newpark*, there is nothing in the Intervenors' possession that could be regarded as the res." *Id.* Furthermore, permitting Eurasia to recover any amount it was allegedly owed by the intervenors "would effectively be rendering a judgment in personam," something we had specifically declined to do in *Newpark*. *Id.*

In light of these prior decisions, we find that the useless judgment rule deprives us of jurisdiction over this appeal. Even if Gros were to prevail in its claim (which was solely *in rem*) that it had a maritime lien against the Vessel,

12

No. 12-30891

the marshal's sale of the Vessel, confirmed by the court,[4] was free and clear of that lien and there is no substitute *res* from which Gros could recover. As in *Newpark*, there is nothing in Community Bank's possession that could be regarded as the *res*.

Although the Supreme Court's decision in *Republic* and our decision in *Elliott* counsel construing the useless judgment rule narrowly, neither applies to the facts of this case. Unlike *Republic*, this case does not involve the simple disbursement of a substitute *res* from the registry of the court. *Compare Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852 (9th Cir. 2005) (holding that when the parties agreed that the owner would deposit a substitute *res* in exchange for release of an arrested vessel, and the substitute *res* was subsequently released by court order, the useless judgment exception did not apply because the court retained legal custody over the security), *with United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008) (holding under the useless judgment rule that the court lacked jurisdiction to consider an appeal over forfeiture of a truck allegedly used in drug trafficking because "the judgment as to the truck has been executed, so the *res* can neither be delivered nor restored to [the former owners]").[5] Further, there is no statute

---

[4] *See First Nat. Bank of Jefferson Parish v. M/V Lightning Power*, 776 F.2d 1258, 1261 (5th Cir. 1985) ("The bid at the marshal's auction does not consummate a sale. It is the equivalent of an offer to the court, not accepted until judicially confirmed. Until confirmation, the auction bid may be rejected." (footnote omitted)).

[5] The Eleventh Circuit reached a similar result in *United States v. One Parcel of Real Estate at 3262 SW 141 Avenue*, 33 F.3d 1299 (11th Cir. 1994). In that case, the government filed an *in rem* civil forfeiture action against a home that it alleged had been purchased with drug trafficking proceeds. *Id.* at 1300. When the home's owners failed to defend the suit, the district court entered a final judgment in favor of the government. *Id.* at 1300–01. One of the former owners later moved to set aside the default judgment and to stay execution of the

13

No. 12-30891

that permits us to reach the Vessel after confirmation of the marshal's sale. *Eurasia*, 411 F.3d at 584. In *Elliott*, the appeal was saved from the useless judgment doctrine only because a judgment may have been valuable in litigation against a subsequent purchaser of a vessel which had been privately sold without court approval. Gros fails to point to any "concrete value" to him of a favorable decision in this appeal given that, even if such a decision issues, he would be unable to take title to the Vessel.[6] *See Elliott*, 980 F.2d at 1005.

Gros argues that the useless judgment exception does not apply because our decisions in *Inland Credit Corp. v. M/T BOW EGRET*, 552 F.2d 1148, 1152 (5th Cir. 1977), *reh'g denied*, 556 F.2d 756; *Treasure Salvors, Inc. v. Unidentified*

---

forfeiture judgment. *Id.* at 1301. The government responded by seeking an order permitting an interlocutory sale of the property. The district court granted both motions. *Id.* After the district court denied the former owner's request to set aside the default judgment, it disbursed the proceeds to several creditors. Because there was a deficiency, the government did not receive any of the proceeds. *Id.* at 1302. The former owners appealed the district court's orders. The government argued that the appeal should be dismissed because the disbursal of the sale proceeds deprived the court of jurisdiction. *Id.* The Eleventh Circuit agreed, dismissing the appeal under the useless judgment exception. The appeals court noted that "it is undisputed that the subject real property has been sold and the proceeds disbursed completely to the priority claimants . . . ," with the government receiving nothing. *Id.* at 1303. As a result, the court concluded, the owners could "neither have their home restored to them nor acquire any proceeds from that sale should they obtain a judgment in their favor." *Id.*

[6] Our decision in *Bargecarib Inc. v. Offshore Supply Ships Inc.*, 168 F.3d 227 (5th Cir. 1999), another case that Gros cites, is also distinguishable. In *Bargecarib*, a charterer sued a vessel *in rem* and its owner *in personam* for breaching the parties' time-charter agreement. *Id.* at 229. The U.S. Marshals arrested the vessel. The owner moved to vacate the arrest and dismiss the charterer's complaint. *Id.* After a hearing, the trial court ordered the vessel released. The charterer appealed. *Id.* On appeal, we found that judgment for the charterer would not be useless because it could "use this judgment as a basis for re-seizing the [vessel] should it return to an American port, and as a basis for pursuing [the owner] personally." *Id.* at 231. Unlike *Bargecarib*, in this case, the *res* was not merely released to its original owner; it was sold free and clear of all liens, precluding the possibility of rearrest. Further, Gros lacks any colorable personal claims against Community Bank that might justify our exercise of jurisdiction.

14

*Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 333–36 (5th Cir. 1978); and *United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976, 982–84 (5th Cir. 1984), permit us to exercise *in personam* jurisdiction over its appeal. We disagree.

Whether a court can continue to exercise jurisdiction following the release of the *res* and whether that court, nonetheless, can afford concrete and valuable relief to a successful appellant are related, yet separate, inquiries.[7] In this case, the answer to the first inquiry is, undoubtedly, yes. As noted above, in *Republic*, the Supreme Court clarified that a court's *in rem* jurisdiction depends on its custody of the *res* when a suit begins, and is not ordinarily destroyed if the *res* is subsequently released. Here, after Community Bank filed suit, the marshals arrested the Vessel. This was sufficient to establish *in rem* jurisdiction. The release of the *res* from the district court's custody did not necessarily divest jurisdiction. *Inland* and *Treasure Salvors* were decided before *Republic* and under the assumption that continuous custody of the *res* was essential to *in rem* jurisdiction. Because *Republic* showed this assumption to be incorrect, we need not consider whether we may exercise *in personam* jurisdiction in this appeal to reform the district court's *in rem* judgment.

But this does not end the jurisdictional inquiry under *Republic* because, as explained above, an exception to our jurisdiction exists when loss of the *res* would render any judgment "useless." In *Inland* and *Treasure Salvors*, we were silent on whether the useless judgment exception applied. In *Inland*, we did not

---

[7] *Cf. First Nat'l Bank of Jefferson Parish v. M/V Lightning Power*, 851 F. 2d 1543, 1545–46 (5th Cir. 1988) (finding that we did not lose jurisdiction over a suit where the *res* had been released and sold to a third party because the party taking the *res* had agreed to be personally liable to the claimant if the claimant succeeded on appeal).

address whether release of the *res* posed an insurmountable barrier to affording the parties practical relief on appeal.[8] And, in *Treasure Salvors*, our ability to afford relief was not at issue.[9] Even after the district court's decision in that case, the bulk of the *res* (a sunken ship and its treasure) continued to be "buried under tons of sand in international waters." 569 F.2d at 335.

The third case Gros cites, *4,680 Pails*, demonstrates the distinction between the initial jurisdictional inquiry and our ability to afford the parties relief notwithstanding the release of the *res*. *4,680 Pails* involved an *in rem*

---

[8] In *Inland*, we declined to dismiss for lack of jurisdiction an appeal brought by two parties who had intervened to bring *in rem* claims against a vessel despite the fact that the district court had distributed the substitute *res*. In the underlying suit, a creditor had sued a vessel *in rem* and its owner *in personam* to recover money owed on a preferred ship mortgage. 552 F.2d at 1150. The vessel was sold in an interlocutory sale, and the proceeds were deposited into the court registry. *Id.* After the district court decided the merits of the remaining creditors' claims, the proceeds were distributed, and the two intervenors were denied a share of the *res*. *Id.* at 1150–51. As Gros points out, we noted on appeal that the original creditor had filed suit both *in rem* and *in personam* and had also invoked our appellate jurisdiction by filing a cross-appeal to recapture from another claimant "a part of her *in personam* recovery out of [a] bonded operating fund." *Id.* at 1152. As a result, we found that it was "proper for us to exercise our jurisdiction *in personam* to correct any errors in the lower court's *in rem* adjudication." *Id.* Although the *res* was paid out to Inland after the district court's decision, *id.* at 1150–51, there was no suggestion that the funds were unrecoverable in the event of a reversal on appeal.

[9] In *Treasure Salvors*, we found that the district court had *in personam* jurisdiction over the plaintiffs' claims because "[t]he government, by intervening . . . and by stipulating to the court's admiralty jurisdiction, waived the usual requirement that the *res* be present within the territorial jurisdiction of the court . . . ." 569 F.2d at 335 (internal citation omitted). In that case, the plaintiffs had sued for possession of and to confirm title to a long-ago wrecked vessel and its valuable cargo, part of which was situated beyond the court's territorial jurisdiction. *Id.* at 333. The United States intervened as a defendant, asserted its own claims, and challenged the trial court's jurisdiction over the portion of the *res* that was located outside of U.S. waters. *Id.* We found, on appeal, that the government's counterclaims under the Antiquities Act, 16 U.S.C. § 431, and the Abandoned Property Act, 40 U.S.C. § 1309 (formerly codified as 40 U.S.C. § 310), provided the district court and us with an independent basis of jurisdiction. *Id.* at 335.

forfeiture suit filed by the United States to seize a drug used to treat animals raised for human consumption.[10]  *Id.* at 981.  Pfizer, which had manufactured and shipped the drug, intervened to defend its legality.  *Id.*  A jury found in Pfizer's favor, and the U.S. Marshals released the drug.  But the court granted a motion by the government for a new trial and entered judgment for the government.  *Id.* at 981–82.  On appeal, we reviewed our decisions in *Inland* and *Treasure Salvors* and found that we were "presented with a similar interface of *in rem* and *in personam* jurisdiction," *id.* at 983, because Pfizer had entered a general appearance in the district court and had "invoked the jurisdiction of the district court" by voluntarily appearing before it, even after the release of the *res*. *Id.* at 984.  But we also analyzed separately Pfizer's argument that, even if we continued to possess jurisdiction, release of the *res* mooted the government's request for forfeiture and destruction of the drug.  We found that the appeal remained justiciable only because it concerned a legal question (the legality of Pfizer's manufacture and sale of a drug), the resolution of which would have a preclusive effect in potential future suits.  *Id.* at 983–84.[11]

---

[10] Although *4,680 Pails* was not an admiralty case, we noted that "[w]e look to admiralty law because section 304(b) of the Act provides, in part, that 'the procedure in cases under this section shall conform as nearly as may be, to the procedure in admiralty.'" *Id.* at 982 n.18 (quoting 21 U.S.C. § 334(b)).

[11] In *4,680 Pails*, we framed the justiciability issue in "mootness" terms and did not specifically reference the useless judgment rule. *See id.* at 984 ("Both the controversy and the parties being before the court, the action is not moot and need not be dismissed."); *see also Jefferson Bank & Trust Co. v. Van Niman*, 722 F.2d 251, 252–53 (5th Cir. 1984) (per curiam) (remanding a maritime suit to the district court to consider whether confirmation of a marshal's sale of a vessel rendered the case "moot"); *Canal Steel Works v. One Drag Line Dredge*, 48 F.2d 212, 213 (5th Cir. 1931) (holding that a suit in which the *res* was released was moot).  The Supreme Court's discussion in *Republic* suggests that mootness and the useless judgment doctrine are analyzed similarly. *See* 506 U.S. at 89 ("The Government contends . . . that this res no longer can be reached, because, having been deposited in the United States

No. 12-30891

Here, however, the sole relief that Gros seeks is an *in rem* judgment permitting him to recover the Vessel. Gros does not suggest that a judgment in this suit would benefit him in future litigation. Because the Vessel is no longer recoverable, and Gros has not pointed to any concrete benefit to it of a judgment in its favor, the useless judgment exception to our jurisdiction applies.

Gros makes additional arguments concerning the district court's order confirming the marshal's sale of the Vessel. Gros contends that it advised the district court that confirming the sale to Community Bank without taking custody of the proceeds or another substitute *res* would jeopardize jurisdiction over a potential future appeal. Gros argues the district court erred in confirming the sale without ordering Community Bank to post a substitute *res*.[12] To the extent that Gros's objections were to the sale itself, those objections were untimely. Under Local Admiralty Rule 64.6(b), the sale was automatically confirmed after Gros failed to object within three days. Although Gros contends that it was not aware of the sale, it does not dispute that Community Bank advertised the sale in accordance with the law or that, on the day of the sale, the U.S. Marshals filed the return into the district court record. Gros's failure to make a timely objection is fatal to its challenge to the propriety of the sale. *See Golden v. Oil Screw Frank T. Shearman*, 455 F.2d 133, 135 (4th Cir. 1972) (per curiam) (refusing to set aside a marshal's sale despite a grossly inadequate sales price because the seamen with a lien on the vessel failed to attend the sale and

Treasury, it may be released only by congressional appropriation. If so, the case is moot, or, viewed another way, it falls into the 'useless judgment' exception noted above, to appellate *in rem* jurisdiction.").

[12] We also note that, "[a]bsent fraud or collusion, a judicial sale should not ordinarily be set aside." *Jefferson Bank & Trust*, 722 F.2d at 252.

No. 12-30891

offer a protective bid, and did not file a motion to set aside the sale within the two-day period set by the local admiralty rules).

Gros argues that in confirming the sale without requiring the posting of a substitute *res*, the district court disregarded its prior order authorizing the interlocutory sale of the Vessel. That order provided that a sale would be "subject to any final ruling of the Court on priority and amount of liens and mortgages." Gros acknowledges that "[u]nder this order, the Bank was not required to deposit cash or post security at the time of the sale, so long as all other competing liens had reached a final resolution." Gros contends, however, that the district court's summary judgment ruling was not a "final ruling," as described in the district court's interlocutory sale order. Gros had the opportunity to raise the argument before the district court and failed to do so. Gros's argument that the sale was premature is, therefore, waived. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (per curiam).

### III.  CONCLUSION

Community Bank's pending motions, including a motion to dismiss this appeal, are GRANTED. This appeal is DISMISSED. Gros shall bear the costs of this appeal.